LEMMON, Judge.
This is á suit by an employee against his former employer for a stock bonus allegedly due under the employment contract. After trial on the merits the trial court rendered a money judgment which awarded plaintiff the value of the stock at the time specified in the contract for payment of the bonus. Defendant has appealed.
The primary issue is the intention of the parties as to the contract terms relating to the award of the bonus.
I
On November 10, 1975 plaintiff, a consulting engineer, and defendant, a corporation engaged in research and development of processes in the manufacture of aluminum, entered into a one-year employment contract, with a provision for extension for up to two additional years. Plaintiff was to serve as director of engineering development for an annual salary of $40,000.00, payable semi-monthly. The contract also provided for certain fringe benefits, including a bonus at the end of each year or upon termination as follows:
“In addition to your salary, you will be awarded Toth common stock bonus of registered shares to the following extent: “1. At the end of the first year of employment:
“(a) stock at market value of $20,000 due at the end of one year’s employment and calculated at the market value on that date and
*1340 “(b) additional stock of up to $20,000 value (same basis of value as in (a) above, the extra amount contingent on your performance in the opinion of the chief executive officer and senior vice president.
“The company would also consider your request for stock options instead of stock bonus contingent on management and Board approval.
“2. At the end of the second and of the third year of employment, for each year, the same condition as for the first year. “Termination: You may terminate this contract at any time upon 60 days written notice to TAC and TAC shall pay compensation earned up to date of termination. The Annual Stock bonus will be paid if notice of termination for cause or resignation occurs within 60 days of the date by which the bonus would be payable under the aforementioned terms of the then current agreement.”
On September 29,1976 defendant notified plaintiff that although his work had been quite satisfactory, the design and installation for which he had been hired was virtually complete, and there was insufficient work left for him to warrant extending the employment contract. After the contract expired by its terms, plaintiff requested delivery of the stock due under the bonus provision. He was told that the stock would be awarded to him on the books of the corporation, but because of federal regulations governing issuance of securities the stock could not be delivered until after registration with the Securities and Exchange Commission (SEC). This suit followed.
II
Defendant’s basic position, at trial and on appeal, is that under federal regulations stock can only be issued after registration or under some exemption from registration, that plaintiff was aware of this fact when he accepted the employment contract, and that both parties therefore intended the stock would not be delivered until time of registration.
In support of its position defendant presented evidence of the corporation’s history and its situation at the time of the execution of the employment contract, contending the evidence was vital to the determination of the intent of the parties. The trial judge properly allowed this parol evidence, not for the purpose of altering the clear terms of the written document, but for the purpose of explaining any ambiguity relating to the “awarding)” of the stock bonus of the “registered shares”.
Defendant’s president testified: Pri- or to plaintiff’s employment, defendant corporation, because of insufficient financial capability, had limited itself to laboratory research of the industrial process under study. When the process was successful in laboratory studies, it was decided in 1975 to build a pilot plant and to attempt to prove the process on a larger scale, in hope of ultimately convincing a financially stable company to underwrite the cost of applying the process to industrial use. Although some corporate stock had been sold earlier in an intrastate offering, the directors of the corporation decided to furnish personally the capital for the project, having been advised by an SEC representative that registration of the stock necessary for public offering was unlikely to be approved as long as the process was a research project. When he hired plaintiff to design and install the pilot plant, he informed him of the limitation on delivery of any stock earned as a bonus. During plaintiff’s term of employment several series of financial negotiations were conducted, but at the time of termination the corporation still had never undertaken stock registration under federal securities law. At time of trial it was not determinable when, if ever, plaintiff’s stock would be delivered.
While defendant’s president pointed out that many officers, directors and employees had been “awarded” stock which has still not been issued, he admitted his own employment contract contained a provision that bonus stock can only be issued pursuant to registration.
On this point the trial court, in oral reasons for judgment, concluded:
“Giving Toth Aluminum the most favorable construction of its constract (sic) *1341 with all the explanations made to Mr. Wood at the time, if in fact it was the intent of the parties to this agreement that the issuance of the stock would be contingent on the eventual success of the corporation, it should have said so”.
We agree with the trial judge’s observations. While parol evidence was admissible to show circumstances that might explain ambiguous contract terms and to determine the common intention of the parties for purposes of interpretation under C.C. art. 1945, the evidence which was presented failed to establish that plaintiff consented to defer delivery of the stock until after registration and further failed to show that circumstances existed which justify the conclusion that plaintiff did consent. Indeed, in the absence of a specific contract provision, contrary inferences are more easily drawn from the existing circumstances.
It would have been far simpler for defendant’s president to specify the time of delivery of the stock bonus in the contract than to attempt on several occasions to explain the complex securities regulations which necessitated deferred delivery. Moreover, while permanent employees might reasonably have been expected to consent to a bonus which is essentially contingent upon the eventual success of the corporation, plaintiff was only a short-term employee, hired to design and construct one specific project, and it is not as reasonable to infer that he would leave a consulting business for temporary employment and consent to having a substantial part of his compensation contingent upon circumstances far beyond his control.[1]
We conclude that under the contract plaintiff was entitled to delivery of the stock bonus at the time his employment was terminated.
III
Defendant alternatively contends the trial court erred in awarding a money judgment, rather than merely ordering delivery of freely tradable stock (which defendant asserts it can now obtain by purchase from a shareholder who is willing to sell).
On this point the trial judge observed: “The contract speaks of an award at completion of his first year of common stock valued at $20,000. That has to have some practical meaning. If it was nothing more than an administrative requirement delay that we were speaking of I would say fine, take all the reasonable time necessary, but this obligation — the award cannot mean only an award, it has got to be in anticipation of issuance at some reasonable point. Today Mr. Gordon (defendant’s president) has candidly admitted there is utterly no more prospect for developing approved registration than there has ever been and if the contract is to mean anything it means he’s got to have an award in a money judgment. I would not even order the issuance of stock because that would add nothing to their executory obligation, they cannot award the stock. Through no fault of anyone’s other than the economic exigencies of the situation the corporation is unable to honor its obligation and the only remedy, if there is a remedy, is going to be a money judgment in the sum of $20,000.”
Defendant breached the employment contract by failing to deliver 5,715 shares of stock to plaintiff on November 9, 1976 or within a reasonable time thereafter.[2] The measure of damages due on account of the breach is the amount of loss the creditor has sustained. C.C. art. 1934.
*1342 At the time delivery of the stock bonus was due, $20,000.00 in shares of defendant’s common stock was readily convertible to cash, and plaintiff’s loss must be determined in view of that fact.[3] The same situation did not necessarily exist at the time this judgment was rendered (and if it did it would make little difference whether the judgment was one for money or one which ordered delivery of stock).
The basic concept of reparation for damages for breach of contract contemplates that the damaged party should be placed as nearly as possible into the condition he would have been, except for the breach. Under the overall circumstances of this case the only feasible method for the trial court to accomplish this objective was to render a money judgment. We find no error in that course of action.
The judgment is affirmed.

AFFIRMED.

. Significantly, this record refers to the contract of only one permanent employee (defendant’s president), and that contract did contain a specific restriction that the stock bonus will be issued only upon registration.

. The figure of 5,715 shares was calculated in plaintiffs petition by dividing $20,000.00 by $3.50, which the petition alleged was the closing bid — asked price on the over-the-counter market on November 9, 1976 (the day plaintiffs contract expired by its terms). Defendant apparently accepted these figures, since it admitted in its answer that plaintiffs 5,715 shares was an obligation of the corporation payable in common stock that had been entered in the company records.

. The 1976 annual report to the shareholders (introduced by defendant) states the corporation’s common stock was traded in the over-the-counter market and had sales prices in the quarter ending August 31, 1976 which ranged from $3.50 to $5.25. (The report also states that in 1976 there were 8,786,778 shares of issued common stock.) Thus, the record establishes that, at the time delivery was due, $20,-000.00 in shares of defendant’s common stock was readily convertible to cash.