408 So.2d 27 (1981)
Buster C. SAUCIER, d/b/a MacArthur Village Beauty Shop, Plaintiff-Appellee,
v.
JOHN-CLAI COMPANY, et al., Defendants-Appellants.
No. 8551.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
*28 Provosty, Sadler & deLaunay, LeDoux R. Provosty, Jr. and F. Rae Swent, Alexandria, for defendant-appellant.
Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellee.
Before FORET, SWIFT and LABORDE, JJ.
LABORDE, Judge.
This case involves the interpretation of a non-competition clause in a contract of lease. Plaintiff-lessee, Buster C. Saucier, d/b/a MacArthur Village Beauty Shop, filed this suit against his former lessors, alleging breach of the non-competition clause in his contract of lease.[1] The trial court found for plaintiff and awarded him a total of $6,648 in damages plus interest. Defendants appealed. Plaintiff answered the appeal.
The issues involve the interpretation of the lease's non-competition clause and the award of damages based on that interpretation. We amend and affirm.

FACTS
One of the defendants, John Clai-Company (John-Clai), is a partnership that owns and operates the MacArthur Village Shopping Center, a shopping mall located in Alexandria, Louisiana. The other defendant is Dr. John W. Deming, a partner in the Company. On June 1, 1972, John-Clai entered a ten-year lease agreement with Saucier for the purpose of Saucier operating a beauty salon in the shopping mall. This lease contained a non-competition clause, the interpretation of which is the focus of this appeal.
On February 15, 1977, Gus Kaplan, another of John-Clai's lessees located in the same shopping mall as Saucier, increased the size of its rented premises by amending its existing lease. In March of 1978, Saucier learned that Gus Kaplan was preparing to open a beauty salon in part of this new area. After failing to secure enforcement of the non-competition clause from John-Clai, Saucier filed this suit on June 21, 1978. On September 7, 1978, a competing beauty salon, located on the premises leased by Gus Kaplan and operated by its sub-lessee, opened for business.

INTERPRETATION OF THE CONTRACT
The dispute between the parties centers around the following provision of the lease contract:

*29 "COMPETING BUSINESSES: Lessor shall not lease during the primary term of this lease or any renewals or any extensions thereof any space in MacArthur Village Shopping Center to any person, firm, or corporation for the purpose of carrying on the business of a Beauty Shop, and sales and services generally carried on in conjunction with such business."
John-Clai urges that the trial court erred in failing to interpret the contract according to its clear and unambiguous terms. In this connection, John-Clai underscores the language "Lessor Shall not lease..." and argues that because the competing beauty shop was sub-leased by Gus Kaplan instead of being directly leased by it, the lease provisions were not violated. We find no merit in John-Clai's contentions.
Agreements legally entered into have the effect of law on those who have formed them and the courts are bound to give legal effect to such agreements according to the true intent of the parties. LSA-C.C. arts. 1901, 1945 and 1963. The intent of the parties is to be determined by the words of the contract and when they are clear and explicit, the terms of the contract must prevail. Sleet v. Gray, 351 So.2d 286 (La.App. 3rd Cir. 1977).
The contract entered into by the parties, in particular the portion above quoted, expressly prohibits John-Clai from leasing any space in the shopping center to anyone for the purpose of operating a beauty shop during the life of the lease. The trial court, after reviewing the contract, resolved the issue in plaintiff's favor concluding that the terms of the lease were not ambiguous and they clearly obligate the lessor not to rent any space in the shopping center that will be used to compete with plaintiff's business. Finding no clear error in this determination, it must be affirmed.
John-Clai's other arguments under this assignment of error were advanced in the alternative this court found that the terms of the contract were ambiguous and resorted to evidence beyond its written terms to determine the parties' intent. Due to our holding above, no further discussion is necessary.

DAMAGES
The trial court awarded plaintiff $4,500 in lost profits, and $1,068 and $1,080 representing return of rentals paid for the non-competition clause and for the premises respectively. John-Clai appeals and urges that the damages awarded were unwarranted and alternatively that they were excessive. Saucier answered the appeal asking that the awards be increased.
We begin with the award for loss of profits. Defendant contends the record does not support the trial court's conclusion that Saucier's losses resulted from the opening of the competing beauty salon in the shopping center. We disagree. Although there is evidence in the record indicating that Saucier's business was not a big money-maker for him and that the area near his salon housed several competing salons which may have contributed to Saucier's waning profitswe nonetheless feel that the lower court's award was supported by the record. For example, both Saucier and his wife who worked in the Salon testified regarding a noticeable slump in business immediately after the competing shop opened in Gus Kaplan's. In addition, plaintiff's Certified Public Accountant, Bruce Stagg, testified in that capacity and some of the records he kept were also introduced into evidence for the court's consideration. The trial court, in its written reasons for judgment, concluded:
"Although Mr. Saucier's business was only marginally profitable over it's lifetime, it did suffer a sudden and precipitous decline in profits once it faced competition from Gus Kaplan and that loss can only be explained in terms of loss of business to that new competition. This Court realizes that a beauty shop currently occupies the area once occupied by plaintiff's shop and that this business is doing quite well but that does not alter the fact that competition, from which plaintiff had contracted to protect himself, *30 did cause his business to finally fail. Damages in the amount of $4,500.00 are reasonable for this loss of profit."
Based on our thorough review of the record, we cannot say that the trial court abused its "much discretion" in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979).
The record likewise supports the trial court's conclusion that Saucier paid additional rental for the insertion of the non-competition clause and we find no abuse of its "much discretion" in allowing a refund of these monies paid as an element of Saucier's damages.
However, we cannot agree with the lower court that Saucier is entitled to a refund of the rent paid for October through December, 1979. The law is clear that a lessee cannot recover rent paid as damages for breach of contract of lease where he had the use of the premises during the period for which the rent was paid. Finnin v. Balter, 168 La. 527, 122 So. 716 (1929). The record indicated that even though Saucier closed his business in October of 1979, he stored his equipment on the premises until December of the same year. Thus, he is not entitled to recover the amount of rent paid for those months.
For the above reasons, the judgment of the lower court is amended to exclude the award of rents paid to defendant. In all other respects, it is affirmed. Costs of this appeal are assessed one-half to defendants-appellants and one-half to plaintiff-appellee.
AMENDED, AND AFFIRMED AS AMENDED.
NOTES
[1] This case was previously before this court on appeal from the lower court's granting of defendants' motion for summary judgment. Saucier v. John-Clai Co., 371 So.2d 1240 (La.App. 3rd Cir. 1979). The summary judgment was reversed and the case was remanded for a full hearing on the merits from which this appeal followed.