483 So.2d 1321 (1986)
BUDDY'S TASTEE # 1, INC. and H. Richard Runnels, III
v.
TASTEE DONUTS, INC.
No. CA-3874.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1986.
Writ Denied April 11, 1986.
*1322 Edward D. Wegmann, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee, Tastee Donuts, Inc.
Leonard A. Radlauer, New Orleans, for plaintiffs-appellants, H. Richard Runnels, III and Buddy's Tastee # 1, Inc.
Before CIACCIO, WARD and WILLIAMS, JJ.
WARD, Judge.
H. Richard Runnels, III and Buddy's Tastee # 2, Inc. ("Runnels") appeal the adequacy of damages awarded them by a judgment against their lessor, Tastee Donuts, Inc. ("Tastee") whose eviction forced them to vacate their subleased business location. The Trial Court held that Tastee breached its obligation to keep Runnels in peaceable possession of the property and as a result, he was entitled to $10,000.00 in general damages for loss of a donut shop and $2,000.00 in attorney fees. The Trial Court rejected Tastee's reconventional demand for damages to the property. Tastee has answered Runnel's appeal, reasserting its reconventional demand and requesting reversal or reduction of the amount of the judgment in Runnel's favor.
Runnel's lawsuit was the third of three which arose from a lease of property at 7249-7251 West End Boulevard in New Orleans. In the original lease, dated November 4, 1970, Clem T. Sehrt and others leased the property to Tastee Donuts, Inc. Tastee, in turn, sublet 7249 West End Boulevard to Gilbert Copeland and 7251 West End Boulevard to Runnels and his business, a Tastee franchisee, Buddy's Tastee # 2. In August 1980, Sehrt and his associates filed an eviction suit against Tastee. Copeland and Runnels, Tastee's sublessees, intervened. Tastee lost the eviction suit based upon failure to provide certificates of insurance. Copeland appealed the eviction, and this Court affirmed. Sehrt v. Tastee Donuts, Inc., 411 So.2d 625 (La.App. 4th Cir.1982). Consequently, Tastee, Runnels and Copeland were evicted.
Sehrt and his associates again sued Tastee, seeking lost rents and damages for physical deterioration of the property as well as attorney fees for the eviction suit. Tastee third partied Copeland, alleging that Copeland caused the eviction by failing to secure insurance. Copeland, in turn, third partied his insurance agent, Frank Arceri, Southern Pioneer Insurance Agency, Arceri's agency, and National Union Fire Insurance Company of Pittsburg, alleging they were responsible for the lapse in insurance coverage. This suit was settled before trial.
Finally, Runnels filed the suit now on appeal, alleging that because of Tastee's breach of the sublease and his eviction he suffered damages through the loss of profits, a lost business opportunity, moving, storage and loss of equipment, as well as personal psychological distress. Tastee reconvened against Runnels for physical damage to its property and again third partied Copeland who again third partied Arceri and the insurers. After trial, all the third party claims were dismissed upon joint motion of the parties, and the only remaining issues are the claims for damages by Runnels and Tastee.
In this appeal, Runnels first contends that the Trial Judge erred in allowing counsel for the third party defendants, Copeland, Arceri, Southern Pioneer, and National Union to cross-examine plaintiff's witnesses and otherwise participate in the trial of the main demand. The Trial Judge overruled Runnels' objections to the participation of the third-party attorneys because if Tastee were found liable to Runnels on the main demand then Tastee would attempt to shift that liability onto the third parties. We agree with this reasoning and reject Runnels' assignment of error.
*1323 The third party litigation concerned the question of who would bear the ultimate responsibility for Runnels' losses resulting from Tastee's eviction. A third party may be brought into and participate in litigation only if he may be liable to a defendant for all or part of the plaintiff's principal demand. La. C.C.P. art. 1111. Hence, a third party's interest in litigation is necessarily affected by the plaintiff's right to recover in the main demand. As a party adverse to the plaintiff, third party defendants were entitled to cross-examine plaintiff's witnesses, subject to the sound discretion of the Trial Judge. La.C.C.P. art. 1634. Although the cross examination of Runnels was perhaps unnecessarily lengthy and redundant, it served to uncover crucial inconsistencies in his claims. A party has no cause to complain merely because he does not like the result of cross examination, and we cannot say that the control of cross examination by the Trial Judge was an abuse of his discretion to conduct the trial so that justice was done. La.C.C.P. art. 1631.
Runnels' other assignments of error relate to the assessment of damages, an issue also raised in Tastee's answer to Runnels' appeal.
The basis of Runnels' recovery from Tastee is Civil Code Article 2696 which makes a lessor answerable for the damage and loss sustained by a lessee who is evicted through no fault of his own. For breach of the lease, a lessee is entitled to prove damages for the amount of his loss and the profits of which he has been deprived, subject to certain exceptions and modifications. Former La.C.C. Art. 1934.
In awarding Runnels $10,000.00 at the close of trial, the Trial Judge stated that damages could not be accurately determined from the evidence and that he was exercising his discretion in awarding $10,000.00 in general damages. This approach may be appropriate but only in cases where a plaintiff has proved that the defendant caused him damages but has failed to prove their amount. Dixie Life Insurance Co. v. Pacific Mutual Life Insurance Co., 416 So.2d 139 (La.App. 4th Cir.1982).
In reviewing the damages award, we must first determine whether Tastee caused damage to Runnels, and if so, whether Runnels proved the amount of damages. We then must conform damages awarded to any amounts proven, or if amounts were not proven, we will review the Trial Judge's discretionary award of general damages.
Runnels claims for damages are, for the most part, supported solely by his own testimony. Although a plaintiff can establish damages through evidence consisting only of his own testimony, that testimony is subject to the trier-of-fact's evaluation of credibility. Runnels' testimony at trial was inconsistent with his deposition taken some three weeks before trial and was contradicted by testimony of several other witnesses as well as by documentary evidence. Under these circumstances, we cannot find manifest error in the Trial Court's ruling, and we conclude the Trial Court Judge was correct in his finding that Runnels failed to prove any amount of damages for loss of profits, loss of a business opportunity, or psychological distress. As to moving and storage expenses and loss of equipment, we cannot say the award of $10,000.00 was grossly inadequate to compensate Runnels.

LOST PROFITS
Runnels' personal and corporate income tax returns reported losses for every year that he operated the Tastee Donut outlet. Runnels claimed that his tax returns were inaccurate and that he planned to file amended returns, but he offered no other proof of his income or profits. He attributed the losses prior to 1981 to his brother-in-law's poor management of the shop, but in 1981 when Runnels himself was manager, gross receipts did not increase. Runnels repeatedly insisted that the shop could have been profitable, but there is no evidence to support his optimistic theoretical assertion. Because lost profits must be proved with reasonable certainty and may not be the object of theoretical *1324 speculation, we find that Runnels did not carry his burden of proving this element of damages. F & F Transfer, Inc. v. Tardo, 425 So.2d 874 (La.App. 4th Cir. 1983).

LOST BUSINESS OPPORTUNITY
While the eviction suit against Tastee was pending, Runnels found a prospective purchaser for his business. He negotiated a purchase price and received two or three written offers from this individual. Although the evidence is conflicting, the final offer to purchase undoubtedly was submitted to Tastee, and it was for a price of $60,000.00. Runnels claims, and his prospective buyer also testified, that earlier offers were higher but that the imminent eviction had lowered the value of the business. Runnels also claims, but his prospective buyer denied, that in addition to the price stated in the offer, the buyer would have assumed various indebtedness of the business. The Trial Judge did not state why he denied Runnels this element of damages. We note however that it was the parties' intent that in the event the donut shop was evicted after the sale, Runnels would repurchase the franchise from his buyer. Since the eviction did in fact take place, Runnels' sale would have been undone. Hence, the purchase offer presented a business opportunity of no real value. Additionally, the sale was contingent upon the primary lessors' consent which in all likelihood would not have been given since they were evicting all their lessees. The sale was further conditioned upon the buyer's obtaining financing from Runnels' father-in-law, who was a stranger to the buyer and to whom Runnels owed money. Considering these peculiar facts and circumstances, we find no manifest error in the Trial Judge's conclusion that there were no damages from Runnels' lost opportunity to sell the business.

PSYCHOLOGICAL DISTRESS
We do not doubt that Runnels could have suffered psychological distress because of the eviction. Nonetheless, such damages are not recoverable for breach of lease or of any contract unless psychological gratification was the primary object of the contract. Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976). Certainly, the primary object of the lease was financial gain, not psychological gratification. Although courts have been willing to compensate victims of mental distress in contract cases which have elements of tort actions, Runnels failed to show any mental distress or anguish beyond his bare allegations of depression and embarrassment. See Gele v. Markey, 387 So.2d 1162 (La. 1980).

MOVING, STORAGE AND LOSS OF EQUIPMENT
Evicted lessees can be entitled to compensation for their moving expenses. Runnels testified that he paid $500.00 to $600.00 to have his equipment removed from the shop, but presented no further proof of the amount. It is plausible to assume that Runnels paid to have his equipment moved, but the Trial Judge was free to assess any reasonable amount for the expense.
Runnels testified that he had to leave some fixtures and improvements, such as the counter, stools, and tile flooring, in the shop. He sold some removed equipment. Other equipment was stored and then forfeited to pay storage costs. Various unitemized estimates of the equipment's value range from $19,000.00 to $70,000.00. Like the moving expense, we find the storage and loss of Runnels' equipment plausible, but the amount not proved.

ATTORNEY FEES
The Trial Judge awarded Runnels $2,000.00 in attorney fees, presumably pursuant to a provision of the sublease calling for a reasonable attorney fee if counsel is employed to enforce the lessee's rights. Although awards of attorney fees are subject to the Trial Judge's discretion, we do not believe the fee awarded to Runnels was reasonable in light of the extensive preparation required for trial of this matter. *1325 Accordingly, we amend the award of attorney fees to $3,500.00.
In summary, we find that Tastee's eviction caused damages to Runnels, and we reject Tastee's contention that Runnels sustained no losses through Tastee's actions. We believe that Runnels proved and can recover only for moving expenses, loss of equipment, and attorney fees. We reject Tastee's contention that the Trial Judge's award of $10,000.00 in damages was an abuse of his discretion, but we find the amount of attorney fees awarded unreasonable and award $3,500.00.
Runnels makes one more assignment of error regarding the Trial Judge's assessment of his damages. He contends that it was error to consider that he failed to mitigate damages. There is evidence that following Tastee's eviction, Runnels attempted to lease 7251 West Boulevard directly from Sehrt and the other owners, but that he was not successful. Tastee's representatives testified that they had other business locations available for Runnels, but that Runnels was interested only in a money settlement from Tastee. Runnels testified that, due to the losses he had sustained, he was not financially able to start business in a new location and that he did not look for another location during the pendency of the eviction suit because Tastee repeatedly told him that the matter would be resolved in their favor. Runnels further testified that following the eviction he attempted to sell his movable equipment.
A lessee who is evicted has an obligation to secure comparable property. Meyer v. Succession of McClellan, 30 So.2d 788 (La.App.Orl.1947). We believe, however, that this rule is one of reasonableness and that Runnels acted reasonably under the circumstances. Moreover, we have found Runnels entitled to damages only for expenses he would have incurred had he mitigated damages by moving to a new business location. Hence, any consideration the Trial Judge gave to failure to mitigate damages has no effect upon Runnels' damage award as we affirm it.
Finally, we consider Tastee's contention that the Trial Judge erred in rejecting its claim for physical damage to the property subleased by Runnels. Both Tastee's primary lease from Sehrt and Runnels' sublease from Tastee required that the lessee maintain the premises in good condition and repair. Sehrt's suit for damages against Tastee alleged that Tastee had breached this provision of the lease. That suit was settled before trial for some $43,000.00, a lump-sum figure which included attorney fees for the previous eviction suit as well as other sums beyond the physical damage to the portion of the property subleased to Runnels. Hence, Tastee sought damages from Runnels under two theories: breach of the sublease and indemnity for the amount paid to Sehrt. The Trial Judge rejected both these theories by finding that Runnels caused no substantial damage. We find that the most substantial damage and disrepair appear to be that unavoidably caused or exposed by the removal of equipment. Other deterioration could have occurred after Runnels' departure. We therefore, will not disturb the Trial Judge's finding of fact on this issue.
AFFIRMED AS AMENDED.