509 So.2d 91 (1987)
Ray HUGUET d/b/a Huguet Enterprises
v.
MUSSO PARTNERSHIP and Musso Builders, Inc.
No. 86 CA0492.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
Writ Denied September 25, 1987.
*92 Ralph Tureau, Gonzales, for Ray Huguet d/b/a Huguet Enterprises plaintiff-appellee.
Charles W. Sartain, M. Aubrey McCleary, Jr., Baton Rouge, for Musso Partnership and Musso Builders, Inc. defendant-appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
EDWARDS, Judge.
This is a suit on a building contract brought by Ray Huguet d/b/a Huguet Enterprises against Musso Partnership and Musso Builders, Inc.

FACTS
Huguet entered into a contract for $49,250.00 with Musso Builders on December 31, 1982, in which he agreed to furnish all of the labor and materials necessary to paint an apartment complex being constructed by Musso Builders. Musso Partnership owned the apartment complex, known as the Christine Apartments. The principals of Musso Partnership and Musso Builders are two brothers, John and Jerril Musso.
*93 On July 1, 1983, John Musso fired Huguet because he was dissatisfied with the quality and speed of plaintiff's work. Huguet sued defendants for $13,364.00, the balance due on the contract.[1] Defendants reconvened for the damages they incurred as a result of plaintiff's failure to paint the building in a good workmanlike manner. The trial court rendered judgment in favor of the plaintiff, finding that the defendants had failed to put plaintiff in default and had not shown that the defects in the painting job were due to Huguet's fault. Defendants then filed this appeal, alleging that the trial court erred in failing to apply the law on building contracts. We agree.

BURDEN OF PROOF
At trial, plaintiff argued that he was only required to prove the existence of the contract, the balance due, and that he was never put in default. LSA-C.C. arts. 1901 and 1903 (current version at LSA-C.C. art. 2014). Huguet entered the contract into evidence; the parties stipulated that the balance due was $13,364.00; and defendants acknowledged that they had not put plaintiff in default. The trial judge believed that plaintiff had carried his burden of proof and entered judgment accordingly. The court dismissed defendants' reconventional demand for damages because it found they had failed to prove that Huguet's performance was defective.
The trial court erred in finding that the defendants had to put Huguet in default before they could dissolve the contract. The law is clear that a building contract may not be dissolved after substantial performance has been rendered. See Airco Refrigeration Serv., Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961); Neel v. O'Quinn, 313 So.2d 286 (La.App. 3d Cir.), cert. denied, 319 So.2d 440 (La.1975). Thus the important question in the instant case is not whether Huguet was put into default but whether Huguet rendered substantial performance on the contract in question.
It is implicit in every building contract that the builder's work should be free from defects in material and workmanship. Article 2769 states that when a contractor fails to perform the job that he has agreed to do, or does not complete it in a timely and workmanlike manner, he is "liable in damages for the losses that may ensue from his noncompliance with his contract." This codal provision has been interpreted judicially to mean that when a contractor has "substantially performed" a building contract, even though certain defects are present, he is entitled to recover the contract price and the owner is relegated to having the price reduced by the amount necessary to perfect the work. Walter La-Fargue Real Estate, Inc. v. Raines, 420 So.2d 1309, 1311 (La.App. 3d Cir.1982).
The burden of proving substantial performance is on the builder trying to recover the balance due on the contract. Whether or not there has been substantial performance is a question of fact. The factors to be considered are "the extent of the defect or non-performance, the degree to which the defect or non-performance defeats the purpose of the contract, the ease of correction, and the use or benefit to the owner of the work performed." Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186, 1190 (La.App. 3d Cir.1985). Once substantial performance has been shown, the burden of proof shifts to the owner who must prove that a defect exists and that the defect came about because of the contractor's faulty workmanship or materials. Hebert v. McDaniel, 479 So.2d 1029 (La.App. 3d Cir.1985); U-Finish Homes, Inc. v. Michel, 183 So.2d 101 (La.App. 1st Cir.1965), cert. denied, 248 La. 1025, 183 So.2d 650 (1966).
In cases involving building contracts, we are bound by the manifest error rule in reviewing the trial court's determination of *94 whether substantial performance was rendered. Richard v. Bourda, 451 So.2d 198, 200 (La.App. 3d Cir.1984). However, the trial court in the instant case did not apply the law on building contracts so it did not make a determination as to whether plaintiff substantially performed the contract. After a thorough review of the record, we conclude that the evidence supports our finding that Huguet did render substantial performance. Therefore, we must determine whether the defendants carried their burden of proving Huguet's painting was defective due to faulty material or workmanship.
It was clearly established at trial that large areas of paint had fallen completely off of the Christine Apartments, that the buildings were peeling, and that they were in need of repainting just one year subsequent to the completion of the job. The trial court concluded that defective "green" wood, not plaintiff's workmanship, caused the peeling. However, the record shows that the wood was "kiln dried" and that defendants used the same siding from the same supplier during the same period on a project only eleven miles away without encountering this problem. The trial court noted that the painter hired to finish the job, Harlan Jeane, experienced the same problem with peeling paint, thus proving that Huguet was not at fault. This reasoning is faulty because if the wood was improperly primed, no paint would stay on it for very long.[2]
We conclude that defendants proved by a preponderance of the evidence that plaintiff's workmanship was defective. Huguet's haphazard method of painting was commented on and complained about by the defendants and others from the beginning.[3] Robert Janssen, the Farmer's Home Administration (FHA) inspector, repeatedly mentioned problems with the painting in his reports, Specifically, he noted that Huguet was spraying the primer on too thinly and was not sealing the edges properly. Richard Eason, the construction administrator for the architectural firm, filed weekly field reports confirming that the quality and slow progress of the painting job were major, continuous problems. We find that the most likely cause for the peeling was moisture in the wood resulting from Huguet's failure to prime the wood and seal the edges properly. Since the wood was of good quality and had been "kiln dried" before delivery to the site, the evidence does not support the trial court's finding that the wood was defective.

DAMAGES
We also find that defendants carried their burden of proving the damages they sustained as a result of Huguet's defective performance. Defendants hired Harlan Jeane to complete and correct the painting job after plaintiff was fired. Mr. Jeane spent between 600 to 700 hours and more than one month completing the painting job. He testified that he was paid $14,000.00 by the Mussos. In addition, one year after the project was finished, the FHA inspected the property and discovered serious deficiencies in the painting job. Since the paint was falling off in numerous places, the FHA told the Mussos to completely reprime and repaint all of the buildings. Defendants established that the cost of repainting would be $7,000.00. Thus, the defendants proved damages totaling $21,000.00. However, Mr. Jeane admitted that he painted over some of Huguet's work simply because he could not match the color Huguet used and thus had to paint an entire wall rather than just touch up a small area. Accordingly, we find that *95 defendants are entitled to have the contract price reduced by $19,000.00.[4]
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Musso Partnership and Musso Builders, Inc., defendants, and against Ray Huguet d/b/a Huguet Enterprises, for damages in the amount of $2,936.00, together with legal interest from date of judicial demand until paid. Costs of this appeal are to be borne by appellee.
REVERSED.
NOTES
[1] amount of Contract $49,250.00
Less Previous Payments 34,470.00
 __________
 14,780.00
Extra work completed as of
7/1/83 1,284.00
 __________
 16,064.00
Less estimated labor and material
to complete job $ 2,700.00
 __________
 $13,364.00

[2] We note that the quality of the paint was clearly established and was not at issue during the trial.
[3] Huguet would not complete work on any apartment fully. He partially painted all six buildings in the apartment complex. This adversely affected the progress of the entire project since it prevented the other subcontractors from doing their jobs.
[4] $49,250.00
 - 19,000.00
 ___________
 30,250.00
 -$34,470.00
 ___________
 - 4,220.00
 + 1,284.00
 ___________
 $2,936.00 overpayment