**J.B.N. MORRIS, Plaintiff-Appellee, Cross-Appellant,**

v.

**HOMCO INTERNATIONAL, INC., Defendant-Appellant, Cross-Appellee.**

No. 87–3709.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1988.

Nathalie M. Walker, Ewell E. Eagan, New Orleans, La., for defendant-appellant, cross-appellee.

Michael H. Piper, III, Metairie, La., for plaintiff-appellee, cross-appellant.

Before RUBIN, GARZA, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The seller of a business seeks to collect a payment due him under the terms of a non-competition agreement executed in conjunction with the sale. Alleging breach of the agreement by the seller, the buyer seeks to avoid the payment and, by counterclaim, to collect damages sustained as a result of the breach. Applying Louisiana law in this diversity-jurisdiction suit, we affirm the district court's holding that the seller violated the contract, but we reverse its judgment insofar as it applied the Louisiana doctrine of substantial performance, and we revise its damage awards.

## I.

J.B.N. Morris founded and owned substantially all of the stock of two companies, Parker Industry Corporation and J.B.N.M. Corporation. He sold both to Parker International Corporation for $4,000,000 in August, 1978. In 1981, all three companies merged into Homco International Corporation. Parker Industry became a division of Homco manufacturing various kinds of oilfield equipment.

When Morris sold the companies to Parker International, he entered into a non-competition and consulting agreement of seven-years duration, separate from the contract of sale. Parker International agreed to pay Morris up to $465,000 for his consultation and advice in helping the company to develop new markets and new products and for his service on the Board of Directors. There is no dispute concerning Morris's performance as a consultant or his fees for this service. In addition, Parker International agreed to pay Morris $145,000 for the first year and $105,000 for each of the following six years in return for Morris's promise to refrain from the activities described in ¶ 4 of the agreement. Paragraph 4 provides in relevant part:

> *Noncompetition:* Except as consented to in writing by the Company, for a period of seven years from the date of this Agreement Morris will not (i) directly or indirectly engage in or become interested in (except for ownership of not more than 5% of the outstanding equity securities of any publicly held company) the business of distributing, renting, manufacturing or marketing any Hevi-wate drill pipe, flow couplings, blast joints, pup joints for tubing, wear bushings, retrieving tools, J–Float valves, or landing nipples or any products or services which perform functions substantially similar to the functions performed by any of such types of products, whether as a sole proprietor, as director, officer or employee of any corporation, firm or other person, as a partner, limited or general, of any partnership, as the owner of any equity securities of any company or otherwise[.]

Parker International and later Homco made the requisite monthly payments to Morris through May 15, 1984. Homco then stopped the payments and informed Morris that it considered him to have breached the non-competition provision. Morris filed suit in state court to collect the remaining contract payments. Invoking diversity jurisdiction, Homco removed to federal court and filed a counterclaim alleging that Morris had breached the contract.

The district court found that Morris had breached the contract in two ways: first, through his 25% ownership interest in Tubular Threading, Inc., (TTI), a company engaged in the manufacture of "tube products" including, for example, pup joints and

blast joints; and second, through his management and ownership of Rental Tools, Inc., a company that rented oil-field equipment including wear bushings and retrieving tools to drilling companies. The court found that Morris had not, as Homco alleged, breached the agreement by interfering with Homco's relationships with its employees or by negotiating with a company called Tube-Alloy to license TTI's proprietary thread patterns.

In spite of Morris's breaches, the district court held that he had "substantially performed" his part of the contract and that Homco, therefore, owed him the remaining contract payments plus certain incidentals amounting to $121,438. From this, the court proposed to deduct $128,757.08, the amount corresponding to the gross revenues TTI and Rental Tools had taken in through violations of the prohibitions of ¶ 4. The district court, therefore, entered a judgment ordering Morris to pay Homco $7,319.08.

Morris timely filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment on the ground that Louisiana law made Homco's lost profits, and not TTI's and Rental Tools's revenues, the measure of damages for breach of contract.[1] The district court granted the motion and, over Morris's objection, reopened the record to permit Homco to introduce evidence of the profits it had lost due to Morris's breaches. A special master received evidence and prepared a report recommending that the court award Homco $54,627.39, an amount purported to represent the lost profits Homco had proved with reasonable certainty. The court adopted the special master's findings and recommendation and altered the judgment to award Morris $66,810.61, the difference between what the court had decided Morris was still due under the contract and the lost profits due to Homco.

Both Homco and Morris appealed. Morris argues that the district court erred in

holding that he had breached the non-competition clause, in reopening the record for Homco to produce evidence of lost profits, and in calculating Homco's lost profits. Homco charges that the district court mistakenly found certain conduct by Morris not in breach of the agreement; improperly borrowed the doctrine of substantial performance from cases involving construction contracts and applied it to the non-competition agreement in this case; and failed to award to Homco the restitution of all contract payments it had made to Morris after the initial breach.

## II.

We review the factual findings of the district court under the clearly erroneous standard,[2] refusing to displace its judgment with our own unless we are left with a firm and definite conviction that a mistake has been made.[3]

■ Paragraph 4 of the non-competition agreement forbids Morris to "become interested in ... the business of ... manufacturing ... any ... flow couplings, blast joints, [or] pup joints for tubing." The district court found that Morris owned a 25% interest in Tubular Threading, Inc., (TTI), a company engaged in threading tube products to create, among other things, flow couplings, blast joints, and pup joints. The district court found further that threading was an integral part of the manufacturing process so that Morris's part ownership of TTI violated the clear terms of ¶ 4. Each of these findings is supported by the record.

Morris argues, however, that he did not breach the agreement by virtue of his interest in TTI because TTI does not compete directly with Homco: TTI threads tube products for third parties whereas Homco threads only in-house products, i.e., products it has manufactured; and TTI does mostly premium threading whereas Homco does more standard threading and con-

**1.** La.Civ.Code Ann. art. 1995 (West 1987).

**2.** Fed.R.Civ.P. 52(a).

**3.** *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

tracts with other companies for premium threading. Morris asserts that Louisiana law frowns on non-competition agreements that proscribe activities beyond the scope of the contracting parties' businesses.

■ These arguments fail for two reasons. First, Louisiana courts uphold non-competition agreements entered into as part of the consideration for the sale of a business and its goodwill so long as the agreements are reasonable in duration, equally binding on all parties, fair to each party, and reasonably protective of "the individual's right to engage freely in his occupation." [4] The district court found, and the record supports, that Morris and Homco held equal bargaining power and executed a contract that was fair to both sides and provided ample opportunity for Morris to engage in the oil-field business outside the scope of the activities precisely proscribed. Thus, the non-competition agreement contravenes neither Louisiana law nor public policy.

Second, the record belies Morris's assertion that TTI did not compete with Homco. Homco may not itself do two-step or premium threading, but it does contract for such services, and it then sells end-finished tube products to its customers. TTI does premium threading for companies that compete directly for Homco's markets. Moreover, the district court found, and the record supports, that TTI had on occasion threaded tubing to American Petroleum Institute specifications, the same specifications Homco follows, and performed services for corporations (including Mobil and Chevron) that are longtime Homco customers. Under Louisiana law, two businesses need not be identical to be in competition; it is sufficient if their operations or markets overlap.[5] We, therefore, affirm the district court's conclusion that Morris breached the

non-competition clause by virtue of his one-quarter ownership of TTI.

■ The district court held also that Morris had breached the non-competition agreement by his ownership and management of Rental Tools, Inc. Paragraph 4 prohibits Morris from obtaining an interest in the business of renting certain oil-field equipment, including wear bushings and retrieving tools. In December, 1979, Parker International agreed to make an exception to ¶ 4 by allowing Morris to rent wear bushings to third parties provided that these bushings came first from Parker. The district court found, however, that Rental Tools had rented both wear bushings and retrieving tools to its customers in June, 1979, some six months before the agreement authorizing such rentals and that, after the agreement, the company had on several occasions made unauthorized rentals of retrieving tools alone. In addition, the court found that Rental Tools had rented wear bushings obtained from a supplier other than Parker International.

Morris complains that these findings were based on testimony by Parker International employees about business records that Homco did not produce. Because it lay within Homco's power to produce these records and it did not do so, Morris asserts that he is entitled to an evidentiary presumption under Louisiana law that the records would have been detrimental to Homco's case. Diversity cases in federal court are, however, governed by federal, not state, rules of evidence,[6] and in any event, evidence other than testimony making reference to Parker's business records supports the district court's findings of several breaches by Rental Tools. The record contains dozens of Rental Tools invoices showing when rentals occurred and what proscribed equipment was rented. This evidence, standing alone, is sufficient

4. *Winston v. Bourgeois,* 432 So.2d 936, 940 (La. App. 4th Cir.1983). *See also Mathieu v. Williams,* 255 So.2d 151, 153 (La.App.2d Cir. 1971); *McCray v. Blackburn,* 236 So.2d 859, 861–62 (La.App.3d Cir.1970), *writ denied,,* 256 La. 845, 239 So.2d 355 (1970); *Desselle v. Petrossi,* 207 So.2d 190, 193 (La.App. 4th Cir.1968), *writ denied,* 252 La. 108, 209 So.2d 39 (1968).

5. *Desselle,* 207 So.2d. at 192.

6. *See* Fed.R.Evid. 101; *Hanna v. Plumer,* 380 U.S. 460, 473–74, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965).

to establish numerous breaches. In conjunction with the testimony of Parker International employees who explained, based on their personal review of Parker's business records, that certain of the wear bushings listed on the invoices could not have come from Parker, the record evidence is sufficient to establish all of the breaches the district court enumerated.

Because the breaches complained of generated less than 1% of the annual sales of TTI and Rental Tools and cost Homco less than 1% of its annual sales, Morris maintains that the breaches were not "material or consequential." In response to this argument, the district court correctly noted that "testimony attempting to minimize the scope of this breach does not negate the breach."

Homco contends that the district court erred in finding that Morris did not breach the non-competition agreement when he negotiated to license Tube-Alloy Corporation to thread tubing for TTI. Homco reasons that if threading is manufacturing, as the court found, then to negotiate to have another company thread tubing is indirect involvement in manufacturing in violation of the agreement. Homco fails to allege, however, that it was in any way damaged by Morris's unconsummated negotiations with Tube-Alloy. We need not decide, therefore, whether this activity breached the contract.

### III.

■ The district court held that the non-competition agreement was a commutative contract making "the performance of the obligation of each party ... correlative to the performance of the other,"[7] as well as a bilateral or synallagmatic contract in which "the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other."[8] The district court noted further that Civil Code articles 2013 and 2022 provide for judicial dissolution or, under certain circumstances, for unilateral dissolution by one party when the other has refused to perform. Nonetheless, the court concluded that Homco could not stop payments to Morris because he had "substantially performed" his contractual obligations pursuant to article 2014 which provides: "A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee."[9]

Homco objects that the district court should not have held that Morris had substantially performed his obligations when Morris himself failed to plead substantial performance. Homco characterizes substantial performance as an affirmative defense and notes that Federal Rule of Civil Procedure 8(c) requires litigants to plead affirmative defenses. Homco argues further that, even if not an affirmative defense, substantial performance is a legal theory that Morris waived by his failure to include it in the pretrial order.

The purpose of Rule 8(c), like the purpose of the requirement that the pretrial order contain all relevant claims and legal theories, is to inform the court and the parties how the case will be tried. Failure to plead an affirmative defense may constitute a waiver and warrant the subsequent exclusion of the defense from the case.[10] Similarly, we have held, "[o]nce the [pretrial] order is entered, it controls the scope and course of the trial, Fed.R.Civ.P. 16. If a claim or issue is omitted from the order, it is waived."[11] These decisions were made, however, in cases in which the district court had exercised its discretion to deny tardy pleading amendments or to exclude the introduction of new theories into the case after entry of the pretrial order.

7. La.Civ.Code Ann. art. 1911 (West 1987).

8. La.Civ.Code Ann. art. 1908 (West 1987).

9. La.Civ.Code Ann. art. 2014 (West 1987).

10. *Trinity Carton Co. v. Falstaff Brewing Corp.,* 767 F.2d 184, 194 (5th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986).

11. *Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir.1982) (citing cases). *See also Swift v. State Farm Mut. Auto Ins. Co.,* 796 F.2d 120, 123 (5th Cir.1986).

This court held simply that the trial courts had not abused their discretion in doing so.

In this case, on the contrary, the district court itself introduced the doctrine of substantial performance in drafting its opinion months after the trial. Federal Rule of Civil Procedure 16(e) provides: "After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a pretrial conference shall be modified only to prevent manifest injustice." The district court held a pretrial conference in this case and issued a final order signed by the judge and the parties. The parties did not seek amendment of the order nor did the court amend it. The order never explicitly or implicitly raised the issue of substantial performance. An issue or theory not even implicitly included in the pretrial order is barred unless the order is subsequently amended "to prevent manifest injustice." [12] Under the circumstances of this case, Homco had no notice that the issue of Morris's substantial performance would be important in the litigation until the time had passed to meet the issue squarely. The district court, therefore, erred in relying on the doctrine to grant Morris relief when Morris had neither pleaded the claim nor urged it at the pretrial conference.

■ Because the issue was not properly before the trial court, we need not decide whether the doctrine of substantial performance applies to a non-competition contract under Louisiana law. We note, however, that in relying on Louisiana Civil Code article 2014 as authority for the doctrine, the district court drew an analogy to building-construction cases. The official comments to article 2014 state that it "does not change the law" and that it is "consistent with ... the accepted jurisprudential rule that a *building contract* may not be dissolved after substantial performance has been rendered" (emphasis added). The parties have cited no cases or treatises and we have found none that support the application of the doctrine to any contract other than one for construction or the clearing of land.[13] As a federal court sitting in diversity jurisdiction, the district court should have hesitated, as we would, to extend Louisiana law beyond the boundaries currently established in the state's own courts.[14]

## IV.

■ Under Louisiana law, "[d]amages [for breach of contract] are measured by the loss sustained by the obligee and the profit of which he has been deprived." [15] At the trial, Homco produced no evidence of the profits it had lost due to Morris's proscribed competition. In ruling on Morris's motion to alter or amend the judgment, the district court decided to reopen the record to receive evidence of Homco's losses. Morris objects to the reopening of the record.

We overturn a district court's decision to reopen the record only for abuse of discretion.[16] Louisiana law provides that when a party can prove the amount of his damages but does not, the court should refrain from estimating what actual damages might

---

**12.** *United States v. First Nat'l Bank of Circle,* 652 F.2d 882, 886–87 (9th Cir.1981).

**13.** *See, e.g., Airco Refrigeration Service v. Fink,* 242 La. 73, 134 So.2d 880, 882 (1961); *Huguet v. Musso Partnership,* 509 So.2d 91, 93 (La.App. 1st Cir.1987), *writ denied,* 512 So.2d 462 (La.1987); *Barber Bros. Contracting Co. v. Chet Homes, Inc.,* 393 So.2d 352, 356 (La.App. 1st Cir.1980), *writ denied,* 396 So.2d 921 (La.1981); *Merrydale Glass Works, Inc. v. Merriam,* 349 So.2d 1315, 1318 (La.App. 1st Cir.1977), *writ denied,* 350 So.2d 1211 (La.1977); *Ryan v. Alexander,* 336 So.2d 944 (La.App. 2d Cir.1976); *Neel v. O'Quinn,* 313 So.2d 286, 290 (La.App.3d Cir.

1975), *writ denied,* 319 So.2d 440 (La.1975); *Lambert v. Jones-McCloskey Constr. Co.,* 311 So.2d 488, 490 (La.App. 4th Cir.1975).

**14.** *Dean v. Dean,* 837 F.2d 1267, 1267–68 (5th Cir.1988); *Harmon v. Grande Tire Co.,* 821 F.2d 252, 259 (5th Cir.1987).

**15.** La.Civ.Code Ann. art. 1995 (West 1987).

**16.** *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331–32, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971); *Capital Marine Supply, Inc. v. M/V Roland Thomas, II,* 719 F.2d 104, 107 (5th Cir.1983).

have been and should, instead, award only nominal damages.[17] The district court recognized its option to award nominal damages, but chose instead to give Homco a second chance to prove actual damages. We cannot say that this decision was an abuse of discretion.

Morris next contends that the district court erred in adopting the special master's calculations of Homco's lost profits. The factual findings of a special master, like those of a district court, are protected by the clearly erroneous standard,[18] but we review errors of law de novo. Under Louisiana law, a party trying to collect lost profits must prove its damages with reasonable certainty; an award based on speculation cannot stand.[19]

■ In his written objections filed in the district court in response to the special master's report and again in his brief on appeal, Morris asserts that the special master calculated Homco's lost profits by subtracting the average, estimated costs to Homco of manufacturing or renting specified equipment from the revenues to TTI and Rental Tools from these activities. The record reveals that this is indeed what the special master did in calculating the damages resulting from competition by TTI and Rental Tools, except perhaps insofar as the latter rented wear bushings. A method of calculation that treats TTI's and Rental Tools's revenues as though they were Homco's improperly relieves Homco of its burden of proving both that it would have made the sales or rentals in question in the absence of competition from Morris's companies and that it would have charged the same prices as TTI and Rental Tools. Homco has, in fact, offered no evidence to support the inference that, but for TTI's and Rental Tools's presence in the market, Homco would have taken in the revenues these companies earned on the proscribed

sales and rentals. We conclude, therefore, that the method employed to calculate most of Homco's lost profits was too speculative to stand under Louisiana law.

■ The special master's method of calculating the profits Homco lost due to Rental Tools's wear-bushing rentals, however, did not suffer from the defect of reliance on one company's revenues to compute another's lost profits. The special master noted that, under the 1979 modification of the non-competition agreement, Rental Tools was permitted to rent wear bushings to third parties so long as these bushings came first from Parker International. It was reasonable for the master to assume that Rental Tools would have made the same volume of rentals whether or not it first properly subrented the bushings from Parker. The master noted further, based on testimony in the record, that when Parker subrented equipment to Rental Tools, the latter received a 25% discount on the rental. The master, therefore, recommended an award to Homco of 75% of the profits Rental Tools generated on wear-bushing rentals of equipment that originated from sources other than Parker in violation of the non-competition agreement as modified in 1979.

It is difficult to determine from the special master's report what amount corresponds to Homco's lost profits attributable to Rental Tools's wear-bushing rentals. The report does, however, include two attachments, labelled II and III, listing wear-bushing rentals by numbered exhibit and date, with each rental discounted to arrive at a figure for Homco's lost profit. Attachment II shows a total of $11,004.38 in losses to Homco; attachment III shows a total of $10,476.38. Insofar as the district court based its award of lost profits to Homco on these two attachments, the award comports with the standard of rea-

17. *Standard Plumbing Supply Co. v. U.S. Steel Corp.*, 703 F.2d 802, 804 (5th Cir.1983) (citing Louisiana cases).

18. Fed.R.Civ.P. 52(a), 53(e)(2).

19. *Buddy's Tastee No. 1, Inc. v. Tastee Donuts, Inc.*, 483 So.2d 1321, 1323–24 (La.App. 4th Cir. 1996), *writ denied*, 486 So.2d 738 (La.1986);

*Shreveport Great Empire Broadcasting, Inc. v. Summergrove Floor Covering*, 455 So.2d 703, 704 (La.App.2d Cir.1984); *Kuswa & Assoc. v. Thibaut Constr. Co.*, 440 So.2d 1338 (La.App. 5th Cir.1983), *rev'd on other grounds*, 463 So.2d 1264 (La.1985); *Standard Plumbing Supply*, 703 F.2d at 804.

sonable certainty established by Louisiana law. We, therefore, affirm Homco's recovery in the amount of $21,480.76.

The district court denied recovery of other sums on the basis that Homco had neglected to submit evidence of these damages to the special master. The record shows, however, that Homco did submit the evidence, with the court's permission, after the master had completed his report. The court should, therefore, have allowed the recovery warranted by this evidence but only insofar as it pertained to wear-bushing rentals. Attachment III of the report, together with the special master's testimony at the hearing on the report, shows that he intended, upon receiving the verification he later received, to recommend that Homco recover $195 for a wear-bushing rental made on March 19, 1983. We add this amount to Homco's award, bringing it to $21,675.76.

Morris raises several additional objections to the evidence upon which the special master relied. Some of these merely duplicate his objection to the reopening of the record. Others are irrelevant to the evidence underlying the reduced award we have affirmed. As indicated above, we affirm the district court's judgment that competent evidence supports an award to Homco based on the profits it lost due to all wear-bushing rentals made in breach of the non-competition agreement.

■ Homco urges that we reverse the district court's award to Morris of all of the contract payments Homco withheld after notifying Morris that it considered him in breach. The district court premised this award on its holding that Morris had substantially performed his obligations and that, therefore, the contract should not have been dissolved.[20] Because we have held the issue of substantial performance barred in this case, Homco had a right to consider the contract dissolved when Mor-

ris refused to comply with the non-competition clause, even after being warned that Homco considered him in breach, thus prompting Homco to cease payments.[21] From that time forward, the contract was void and neither party was under any obligation to the other. Homco, therefore, owes Morris none of the payments it withheld after the dissolution.

■ Homco contends further that it is entitled to restitution of all payments made to Morris after he first breached the contract in June, 1979, but before Homco learned of his breaches and stopped payments in May, 1984. The district court denied this claim on the ground that Morris had substantially performed. We affirm the district court's denial, but on other grounds.

Homco rests its claim, first, on several provisions of the Louisiana Civil Code providing for the partial dissolution of contracts. Article 2018 provides in part: "If partial performance has been rendered and that performance is of value to the party seeking to dissolve the contract, the dissolution does not preclude recovery for that performance, whether in contract or quasi-contract." Homco asserts that it seeks partial dissolution in the form of recovery of only those payments made after the breach. Article 2019 provides: "In contracts providing for continuous or periodic performance, the effect of the dissolution shall not be extended to any performance already rendered." Homco argues that this wording implies its obverse—that dissolution shall extend to the entire period of non-performance and thus back to the initial breach. Finally, Homco relies on articles 2013 and 2022, permitting a party to a bilateral or commutative contract to seek judicial dissolution or, under certain circumstances, to regard the contract as dissolved and to cease performance.

20. *See* La.Civ.Code Ann. art. 2014 (West 1987).

21. *See* La.Civ.Code Ann. arts. 2013 ("When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved....") & 2016 ("When ... it is evident that the obligor will not perform, the

obligee may regard the contract as dissolved without any notice to the obligor.") (West 1987). *See also* Booker v. Winding, 522 So.2d 1240, 1241 (La.App. 4th Cir.1988); *White v. Boutte*, 392 So.2d 124, 125 (La.App. 1st Cir.1981), *writ denied*, 396 So.2d 929 (La.1981).

Homco misunderstands the remedy of partial contract dissolution. The official comments to article 2018 show that it refers primarily to cases in which a seller delivers only a fraction of the goods he contracted to supply or a contractor completes only partial construction.[22] In such cases, the seller is entitled to payment for the goods delivered, unless the contract provided for the delivery of either all or none of the merchandise, and the buyer is entitled not to pay for the goods it never received.[23] A contractor who substantially performs is entitled to the contract price reduced by the amount necessary to complete or perfect the work.[24] Even assuming that these decisions are relevant to interpretation of a non-competition agreement, they do not stand for the proposition that the obligee may receive damages resulting from the obligor's partial non-performance *plus* restitution of all of the payments made to the obligor during the period of his partial non-performance.

In this case, the district court awarded Homco damages for the profits it lost due to Morris's proscribed competition, and we have affirmed a substantial part of this award. Article 2018, like article 2019, provides that one who has partially breached a contract may nonetheless recover for his partial performance and that one who has received incomplete performance may recover for the deficiencies.[25] These articles do not authorize restitution of contract payments in addition to these remedies.

Moreover, Homco cannot avail itself of articles 2013 or 2022 to effect a retroactive partial dissolution of the contract because these provisions permit a party either, under certain circumstances, to regard the contract as dissolved from the time it discovers the breach, as we have already approved, or to seek judicial dissolution, a remedy that takes effect only when a court declares the contract void and not at the date of the breach nor at the time suit for dissolution was filed.[26]

Homco notes next that article 1995 permits recovery of "the loss sustained by the obligee *and* the profit of which he has been deprived" (emphasis added). Homco argues that the payments made to Morris after the breach represent "losses" it may recover in addition to lost profits. Louisiana caselaw on contract damages, however, supports our view that Homco cannot recover the payments it made after the breach. Louisiana courts have often stated the general principle that "[t]he primary aim ... of the law of damages for breach of contract is to place the plaintiff in the same position in which he would have been if the contract had been fulfilled."[27] To allow Homco to recover both lost profits and the payments made to Morris after the breach would put it in a better position than it would have occupied had the contract been fulfilled because Homco would then get the benefit of its bargain (i.e., the recovery of lost profits due to the proscribed competition) plus return of the money it paid Morris to receive this benefit. The general rule is that restitution may be had only as an alternative to damages for actual losses resulting from a breach, not in addition to such damages.[28] We are confident that, except perhaps in the rarest of cases,[29] the Louisiana courts would refuse to award restitution of contract pay-

**22.** See La.Civ.Code Ann. art. 2018, comments (b)—(e) (West 1987) (citing cases).

**23.** *H.T. Cottam & Co. v. Moises,* 149 La. 305, 88 So. 916 (1921).

**24.** See *supra* note 13.

**25.** See 2 Litvinoff, *Obligations* § 271 (1975).

**26.** *Reed v. Classified Parking System,* 324 So.2d 484, 490 (La.App.2d Cir.1975), *writ denied,* 325 So.2d 791 (La.1976).

**27.** *Security Nat'l Bank of Shreveport v. Terrell,* 459 So.2d 131, 136 (La.App.2d Cir.1984). *See also Hemenway Co. v. Bartex, Inc.,* 373 So.2d

1356, 1359 (La.App. 1st Cir.1979), *writ denied,* 376 So.2d 1272 (La.1979); *Wood v. Toth Aluminum Corp.,* 367 So.2d 1338, 1342 (La.App. 4th Cir.1979), *writ denied,* 371 So.2d 833 (La.1979); *North Am. Contracting Corp. v. Gibson,* 327 So. 2d 444, 450 (La.App. 3d Cir.1975), *writ denied,* 332 So.2d 280 (La.1976).

**28.** Restatement (Second) of Contracts § 373 (1979).

**29.** *Compare Saucier v. John-Clai Co.,* 408 So.2d 27 (La.App. 3d Cir.1981).

ments to a party that had sought and received actual damages.

For these reasons, we AFFIRM the judgment insofar as it holds that Morris breached the non-competition agreement and that Homco may not recover contract payments made after the breach; REVERSE the judgment insofar as it holds that Morris is entitled to any payments Homco withheld after dissolution of the contract; and MODIFY the judgment to award damages to Homco in the amount of $21,675.76 to compensate it for the lost profits it proved with reasonable certainty.