421 So.2d 1127 (1982)
Paul G. SMITH et al., Plaintiffs-Appellees,
v.
W.A. MONCRIEF, et al., Defendants-Appellants.
No. 82-156.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
Rehearing Denied December 2, 1982.
Writ Denied February 4, 1983.
Seago, Patrick & Carmichael, John E. Seago, Baton Rouge, for defendants-appellants.
Michael J. Johnson, Cottonport, for plaintiffs-appellees.
Before CULPEPPER, GUIDRY and LABORDE, JJ.
*1128 GUIDRY, Judge.
In this suit plaintiffs, David Allen Ducote, Sr., (hereafter Ducote) and Paul G. Smith (hereafter Smith) seek to recover from defendants, Richard H. Friedberg, W.A. Moncrief, Sr., Elizabeth Moncrief, W.A. Moncrief, Jr., and Deborah Moncrief (hereafter Friedberg-Moncrief), the sum of $45,870.30, which sum is allegedly due plaintiffs under certain contractual stipulations set forth in acts of sale by Friedberg-Moncrief to Ducote and Smith. Following institution of suit, L.J. Bonial Jr., Glenn Ducote and Raymond Plauche were joined as parties plaintiff.

FACTS
By deed dated May 13, 1977, Richard H. Friedberg, W.A. Moncrief, Sr., Elizabeth Moncrief, W.A. Moncrief, Jr., and Deborah Moncrief acquired from Roy O. Martin Lumber Company, Inc. several large tracts of land situated in the Parishes of Avoyelles and St. Landry, Louisiana. In the act of transfer, Roy O. Martin Lumber Company, Inc. (hereafter Martin) reserved unto itself all growing timber and timber products located on the said property together with the right to remove such timber and timber products during a time specified in an agreement styled "Cutting Period Agreement" simultaneously executed by the parties. The agreement between Friedberg-Moncrief and Martin, insofar as this litigation is concerned, provides in pertinent part as follows:
"H. Martin and Martin Industries agree that as the cutting and removal operation of timber and timber products from the property shown on Exhibit A are completed, that such lands as to which cutting and removal operations are completed, shall be released from the timber reservation and removal provisions hereof (except those relating to or affecting access or ingress and egress to other Exhibit A property). Upon the commencement of clearing or preparation for cultivation of the said lands upon which cutting and removal are complete, Friedberg-Moncrief shall designate the location for exercise of rights of ingress and egress across the said lands, and except for such designated rights of passage, said lands shall be released from the access, ingress and egress rights provided herein. Martin and/or Martin Industries shall furnish written notice thereof upon completion of cutting and removal operations from each 160 acres completed. Martin and/or Martin Industries shall within ten (10) days of the receipt thereof, sign appropriate release documents, prepared by and at the expense of Friedberg-Moncrief, suitable for filing in the public records when called upon to do so.
I. Friedberg-Moncrief do hereby grant to Martin and Martin Industries, their successors and assigns, for the period of removal of timber and timber products from the property shown on Exhibit A, the rights of ingress and egress to and from the said property and over and upon the said lands therein described, as may be necessary in connection with the cutting and/or removal of timber and timber products. Martin and Martin Industries shall further have the right to build bridges and remove same, to make roads over the property, to store timber and timber products on the property, and to perform all other activities in connection with the preservation and removal of the timber which are consistent with good forestry and timber management practices prevailing in the industry. This grant is subject to paragraph H above."
Subsequent to their acquisition of the aforementioned several tracts of land, Friedberg-Moncrief conveyed unto Ducote a 575.30 acre tract located in Section 17, T 2 S, R 6 E, in Avoyelles Parish, Louisiana, and unto Smith a 557.50 acre tract in Section 18, T 2 S, R 6 E, Avoyelles Parish, *1129 Louisiana. The purchasers in each of these sales acknowledged the existence of Martin's timber rights on the property conveyed and agreed to accept the property subject to the terms and conditions of the timber contract between Martin and Friedberg-Moncrief. In the sales referred to, the vendors agreed to make certain payments to the vendees for the acreage conveyed so long as it remained encumbered by the timber contract in favor of Martin from and after certain stipulated dates. The portion of the Ducote sales agreement so providing reads as follows:[1]
"Sellers agree to pay on a semi-annual basis unto purchaser interest calculated at nine (9%) per cent per annum on Four Hundred Fifty and No/100 ($450.00) Dollars per acre which sum shall be prorated on a daily basis for all acreage which remains encumbered by the timber contracts in favor of Roy O. Martin after March 31, 1979. As the acreage is released from the timber contracts, the interest on that particular tract will be calculated on a daily basis, and sellers shall not be thereafter responsible to purchaser for interest thereon. Sellers agree that the tracts of land released from said timber contracts shall not be in less than forty (40) acre tracts. Purchaser shall be notified in writing of land being released from any timber contract and the interest charge paid by sellers shall cease on the released property upon the date notice to purchaser is received."
Subsequent to Smith's acquisition of the 557.30 acre tract, he conveyed the entirety thereof in divided portions to L.J. Bonial, Jr., Glenn Ducote, G.P. Smith and Raymond Plauche.[2] In each of these sales the vendees acknowledged and agreed to all conditions and reservations contained in the act of sale from Friedberg-Moncrief to Smith. These latter sales contain no assignment by Smith to his vendees of his rights under the Friedberg-Moncrief sale to receive semi-annual payments during the period that the property sold was encumbered by the Martin timber contract.
Pursuant to the quoted stipulation contained in the aforesaid sales, Friedberg-Moncrief made semi-annual payments to Ducote and Smith on the entirety of the properties, Ducote having been paid through December 31, 1979 and Smith having been paid through June 30, 1980. Both Smith and Ducote concede that all payments due under the aforesaid agreement were made to them through the dates last specified; however, no payments were received by either after the specified dates. On August 25, 1980, Friedberg-Moncrief's attorneys gave formal written notice by certified mail to Smith and Ducote advising that all lands conveyed to them by Friedberg-Moncrief had been released from the timber cutting agreement encumbering such acreage. The formal notice referred to reads in pertinent part as follows:
"The above referenced land was encumbered by various timber reservations and cutting period agreements in favor of Royal (sic) Martin Industries, et al. This letter will serve to you as formal notice under the terms of the Act of Sale that said property has been released from the various timber cutting agreements encumbering this acreage. Thus, our responsibility to you for your interest in the future ceases immediately."
Contrary to this formal notice the record clearly reflects that on August 25, 1980 the Ducote and Smith properties had not been released from the timber contract by Martin nor had Martin completed its timber removal operations on such properties. According to the record Martin completed its timber removal operations on the Ducote tract in early September, 1980 and its operations on the Smith tract, except for ten (10) acres, in early December, 1980. Further, there is no documentary evidence in *1130 the record confirming that Martin ever executed a formal release of its rights under the timber contract as to the Smith and Ducote tracts. John Munsterman, Martin's forest manager, testified that a formal release of all of Martin's rights under the timber contract was executed and delivered to Friedberg-Moncrief on November 16, 1981; however, such release was not made a part of the record in this case.
On February 2, 1981, Smith and Ducote instituted this suit against Friedberg-Moncrief, defendants herein, seeking judgment in the amount of $45,870.30, said to be due them under contractual stipulations in the sales from Friedberg-Moncrief to Smith and Ducote. Friedberg-Moncrief filed answer generally denying the allegations of plaintiffs' petition. In further answer Friedberg-Moncrief urged that the property sold to Ducote and Smith had been cleared of all merchantable timber and under the terms of the timber contracts encumbering said land such lands had been automatically released therefrom when cleared. Defendants further averred that Smith and Ducote had been notified in writing of such release by certified letter dated August 25, 1980.
By motion and order dated July 31, 1981, L.J. Bonial, Raymond Plauche and Glenn Ducote were substituted as parties-plaintiff in lieu of Paul Smith. However, shortly thereafter, on August 18, 1981, by means of a subsequent motion and order, Paul Smith was reinstated as a party-plaintiff in these proceedings. Upon the joinder of L.J. Bonial, Raymond Plauche and Glenn Ducote, as parties plaintiff, Friedberg-Moncrief filed an exception of no right or cause of action urging, in effect, that such parties were without right to institute suit against Friedberg-Moncrief as there existed no privity of contract between them.
The trial court, in written reasons for judgment, concluded that (a) the demands of Bonial, Plauche and Ducote against Friedberg-Moncrief should be dismissed for lack of contractual privity; and, (b) the right of David Ducote and Paul Smith to semi-annual payments under the contractual stipulation contained in the respective sales to them continued until such time as formal written releases of the Martin timber contract, insofar as it affected the Ducote and Smith lands, were executed by Martin and recorded in the conveyance records of Avoyelles Parish, Louisiana. The trial court concluded that this was not done until November 16, 1981. Accordingly, the trial court calculated the amount due Ducote and Smith as follows:
"Therefore, the defendants, Moncrief and Friedberg, owe David Ducote as follows:
 $450.00
 x 575.3 acres
 $258,885.00
 x 9% 
 $23,299.65 annually
 $ 1,941.64 monthly
 $ 63.83 per diem
Using the above computations, Ducote would be owed for 1145 days from Sept 28, 1978 through Nov 16, 1981 for the total sum of $73,085.35 less credit for payments previously made.
David Ducote testified that he was paid to date of Jan 1, 1980. The court assumes he was paid for 458 days or the sum of $29,234.14 leaving a balance due by defendants, Moncrief and Friedburg (sic), to David Ducote of $43,851.21.
The defendants, Moncrief and Friedburg, (sic) owe Paul Smith as follows:
 $450.00
 x 557.3 acres
 $250,785.00
 x 9% 
 $ 22,570.65 annualy (sic)
 $ 1,880.89 monthly
 $ 61.84 per diem
Using the above computations, Smith would be owed for 1145 days from Sept 28, 1978 through Nov 16, 1981 for the total sum of $70,806.80 less credit for payments previously made.
Paul Smith testified that he was paid to date of July 1, 1980. The court assumes he was paid for 640 days or the sum of $39,577.60 leaving a balance due by defendants, Moncrief and Friedburg, (sic) to Paul Smith of $31,229.20...."
*1131 On January 5, 1982, the trial court signed a formal judgment dismissing the demands of Bonial, Glenn Ducote and Plauche but granting judgment against Friedberg-Moncrief and in favor of David Ducote for the sum of $43,851.21 and in favor of Paul Smith for the sum of $31,229.20, both sums with interest from date of judicial demand until paid. Friedberg-Moncrief have appealed from this judgment. Plaintiffs have neither appealed nor answered the appeal of Friedberg-Moncrief, therefore, the judgment dismissing the demands of the plaintiffs, Glenn Ducote, Raymond Plauche and L.J. Bonial, is now final.
Appellants urge that the trial court erred in the following particulars: (1) in awarding judgment to Paul Smith, although by motion and order dated July 31, 1981 Bonial, Plauche and Ducote were substituted as parties plaintiff in his stead; (2) in concluding that plaintiffs were entitled to interest payments under the sales contracts until full releases in writing were secured from Martin; and, (3) in awarding judgment to plaintiffs in excess of the amount prayed for in their petition. We will discuss these assignments of error in the order set forth above.
We find no merit in appellants' first assignment of error. Although by order dated July 31, 1981 (Tr. pg. 17) Paul Smith was dismissed as a party plaintiff, by subsequent order dated August 18, 1981, long prior to trial (Tr. pg. 18), he was reinstated as a party plaintiff.
Appellants next contend that the trial court erred in concluding that plaintiffs are entitled to interest payments under the sales contract until full releases in writing were secured from Martin. In this connection, appellants urge that the lands encumbered by the timber contract, according to its terms, were automatically released from the contract on the date said lands were denuded of merchantable timber by Martin. In this same vein, appellants argue that it was the intent of the parties to the sales contract that once the property conveyed by Friedberg-Moncrief to Ducote and Smith was susceptible of being cleared of stumps and prepared for cultivation no further interest payments were due under the contracts. In the alternative, appellants urge that no interest payments were due following the tender of formal written notice on August 25, 1980, that the Ducote and Smith acreage had been released from the Martin timber contract. We find merit in none of these contentions.
Legal agreements have the effect of law upon the parties, and they are bound by their agreement regardless of any seemingly harsh consequences, provided the agreement is not contra bonos mores or in violation of some prohibitory law. Further, courts are bound to give legal effect to all contracts according to the true intent of the parties. Intent is to be determined by the words of the contract, when same are clear, explicit and lead to no absurd consequences. C.C. Articles 1901, 1945; Maloney v. Oak Builders, Inc., 235 So.2d 386 (La.1970); Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963); Baker v. Life General Sec. Ins. Co., 405 So.2d 1162 (La.App. 1st Cir.1981); Saucier v. John-Clai Company, 408 So.2d 27 (La.App. 3rd Cir. 1981); Van Dung v. Tel Ag Services, Inc., 407 So.2d 1339 (La.App. 3rd Cir.1981).
The release provisions in the timber contract are clear, concise, easily understood and lead to no absurd consequences. By the terms of the timber contract and the simultaneous "cutting agreement" Martin was allowed a specified period of time within which to remove all timber and timber products from the Friedberg-Moncrief properties. During the entire term for timber removal Friedberg-Moncrief granted to Martin the right of ingress and egress over all property, such right before and during timber removal being without restriction, however, subject to specific designation following completion of timber removal operations. As the timber removal operations were completed on each 160 acre block Martin was obligated to notify Friedberg-Moncrief, whereupon the latter could prepare, at their own expense, written instruments suitable for filing in the public records releasing said 160 acres from the timber reservation *1132 and removal provisions of the contract and designating the location for Martin's exercise of rights of ingress and egress over such released properties during the remainder of the term of the timber contract.
The release provisions of the contracts of sale from Friedberg-Moncrief to Ducote and Smith are likewise clear and precise. Friedberg-Moncrief were obligated for the stipulated interest payments so long as the acreage sold remained unreleased from and encumbered by the Martin timber contracts. These release provisions contemplated partial releases of not less than 40 acres and cessation of interest payment on the tracts released from the timber contract from the date purchaser received notice in writing of such release.
Although Martin completed its timber removal operations on the Ducote property in early September, 1980 and on the Smith property, except for 10 acres, by early December, 1980, Friedberg-Moncrief took no action whatever to secure a release of such properties from the timber reservation and removal provisions and to have designated with specificity Martin's right of ingress and egress over such properties. Until such release and right-of-way designation was secured from Martin, the provisions of the contract between Martin and Friedberg-Moncrief were viable and subject to exercise over the Ducote and Smith properties. Although the merchantable timber had been removed, Martin's right of ingress and egress over such properties was unrestricted.
The stipulation in the contracts of sale for interest payments require such payments on an acreage basis until the "acreage is released from the timber contracts". The only release contemplated by this provision is that which Friedberg-Moncrief was entitled to demand and Martin obligated to deliver under paragraphs H and I of the timber contract. Ducote and Smith are entitled to interest payments under the explicit terms of the agreement until the release of their properties from the Martin timber contract.
There is no merit in appellants' contention that the lands encumbered by the Martin timber contract were automatically released from the contract on the date said lands were denuded of merchantable timber. The express provisions of the contract belie this conclusion. Equally without merit is appellants' contention that the parties intended by their contract that interest payments should cease once the lands had been cut over and were susceptible of being cleared of stumps and prepared for cultivation. Parole evidence bearing on intent is inadmissible where the intent of the parties can be ascertained by analysis of the contract provisions. White v. Rimmer & Garret, Inc., 340 So.2d 283 (La.1976). Even were parole evidence admissible the record falls far short of establishing that this was the intention of the parties. To the contrary, plaintiffs testified that it was their understanding that interest payments were due and owing until such time as the properties were fully released from the Martin contract. We also reject appellants' alternate contention. Although defendants did formally notify plaintiffs on August 25, 1980, that their acreage had been released from the timber contract, this notice was without effect for being without foundation in fact. The record clearly reflects that Martin had not, on August 25, 1980, executed a release of the Ducote and Smith acreage from the timber contract. In fact the record contains no evidence of any release except for the testimony of John Munsterman that a release was executed by Martin on November 16, 1981. Further, on August 25, 1980 Martin had not completed its timber removal operations on either the Ducote or Smith tract and Martin continued to retain and actually use its rights of ingress and egress on the properties without restriction. For these reasons we attach no significance whatever to the written notice of August 25, 1980.
Appellants finally contend that the trial court erred in awarding plaintiffs judgment in excess of the amount prayed for in their petition. We find merit in this contention.
*1133 In their petition, plaintiffs alleged that defendants were indebted to them in the total sum of $45,870.30 and prayed for judgment in that amount. At trial, defendants timely objected to any evidence tending to show their indebtedness to plaintiffs for any amount in excess of that prayed for in their petition. Plaintiffs did not then seek leave of court to amend their pleadings. Evidence of defendants' indebtedness to plaintiffs in excess of that prayed for was admitted burdened with defendants' objection. Under such circumstances, we conclude that the trial court erred in collectively awarding plaintiffs judgment for the total sum of $75,080.41. As we stated in Ehrhardt v. Cummins, 369 So.2d 213 (La. App. 3rd Cir.1979), writ denied, 369 So.2d 1366:
The general rule is that a litigant may not recover an amount greater than that for which he prayed in his petition. Friedman Iron and Supply Co. v. J.B. Beaird Co., Inc., 222 La. 627, 63 So.2d 144 (1952); Alumaglass Corp. v. Succession of Kendrick, 303 So.2d 911 (La.App. 1st Cir. 1974); writs refused February 14, 1977. The only exception to this rule of which we are cognizant involves elements of special damages in situations when otherwise inadmissible evidence is admitted without objection and the pleadings are enlarged to that extent. LSA-C.C.P. Article 1154; Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552, (La.App. 3rd Cir.1968), writs refused November 15, 1968.
In conformity with this well established rule we will amend the trial court judgment so as to reduce the amount awarded to that prayed for by plaintiffs. We apportion the amount prayed for by the parties and to be awarded, i.e., $45,870.30, as follows:
We first calculate the amount due by Friedberg-Moncrief to the parties from date of last payment to each through the date suit was filed utilizing the per diem amounts set forth in the trial court's written reasons, which we find to be correct.

David Allen Ducote Sr. - 398 days @ $63.83 per day
 (January 1, 1980 through
 February 2, 1981)........ $25,404.34
Paul G. Smith - 217 days @ $61.84 per day (July 1,
 1980 through February 2, 1981).... $13,419.28
 __________
 Sub-Total $38,823.62

The balance of the amount prayed for, i.e., the sum of $7,046.68, we apportion among plaintiffs on a per diem basis and conclude that Ducote is entitled to receive the additional sum of $3,579.20 and Smith the additional sum of $3,467.48. Finally, we observe that the trial court judgment fails to cast defendants, Elizabeth Moncrief, Deborah Moncrief and W.A. Moncrief, Jr., in judgment. We will amend the judgment so as to correct this error. In sum, we amend the trial court judgment so as to award plaintiff, David Allen Ducote, Sr., judgment against W.A. Moncrief, Sr., Elizabeth Moncrief, W.A. Moncrief, Jr., Deborah Moncrief and Richard Friedberg, in solido, in the sum of $28,983.54 (in lieu of the sum of $43,851.21) together with legal interest on such sum from date of judicial demand until paid. We further amend the trial court judgment so as to award plaintiff, Paul G. Smith, judgment against W.A. Moncrief, Sr., Elizabeth Moncrief, W.A. Moncrief, Jr., Deborah Moncrief and Richard Friedberg, in solido, in the sum of $16,886.76 (in lieu of the sum of $31,229.20), together with legal interest on such sum from date of judicial demand until paid. In all other respects the judgment appealed from is affirmed. Costs of this appeal are to be apportioned ½ to appellees and ½ to appellants.
AMENDED AND AFFIRMED.
NOTES
[1] The quoted stipulation from the Ducote sale is identical with that set forth in the Smith sale except for the stipulated date after which interest is calculated. The stipulated date in the Smith sale is December 31, 1978.
[2] G.P. Smith is not a party to this suit.