459 So.2d 1371 (1984)
CHEF'S FRIED CHICKEN, INC., Plaintiff-Appellant,
v.
BULL McWOOD, INC., Kevin J. McCarrion, William B. Bull & Robert B. Harwood, Defendants-Appellees.
No. 83-1104.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1984.
*1373 Joseph A. Koury, Lafayette, for plaintiff-appellant.
Charles L. Bull, Jr., Welsh, Miller, Miller & Craton, John F. Craton, Crowley, for defendants-appellees.
Before DOUCET, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
Plaintiff, Chef's Fried Chicken, Inc., sued defendants, Bull McWood, Inc. (formerly BHM, Inc.), and William B. Bull, Robert Harwood, and Kevin McCarrion (shareholders in Bull McWood, Inc.), for breach of contract. Plaintiff contends that defendants violated the terms of a franchise agreement. The trial court held that the contract was not breached. Plaintiff appeals. We amend and affirm.
In this suit for breach of contract, plaintiff is a franchisor of various fried chicken outlets. On June 11, 1980, plaintiff and Bull McWood, Inc. entered into a franchise agreement. Section 11 of that agreement provides as follows:
"Franchisee shall not sell, transfer, assign, or lease, or sublet business premises, the business thereon, or any part thereof without in each instance first offering the same to the franchisor upon the same terms that franchisee shall previously have received as a bona fide written offer from a responsible, fully disclosed prospective purchaser. Thereafter the franchisor shall have thirty (30) days within which to determine if it desires to accept such offer. If the franchisor should decline or fail to accept such offer, the franchisee may sell, transfer, assign, or lease or sublet such interest, as the case may be, within sixty (60) days thereafter, on the same terms and conditions as contained in such offer. In no event shall the franchisee make any public offer to sell, transfer, assign, lease or sublet through any media or public advertising without first having complied with the conditions and terms of this paragraph."
William B. Bull stated that during the course of 1980, the Chef's No. 2 fried chicken franchise did not turn a profit and, in fact, lost money. On November 13, 1980, Bisbano's, Inc. made a written offer to purchase the Chef's No. 2 fried chicken business from Bull McWood, Inc. for $52,500. It is noted that William B. Bull and his wife were the sole shareholders in Bisbano's, Inc., while William B. Bull was the 50% shareholder in Bull McWood, Inc., as well as the president of both corporations. On November 14, 1980, notice of the offer was given to Chef's, Inc., by Charles Bull, attorney for Bull McWood. Chef's, Inc., subsequently put up a $2,500 deposit and, not desiring to purchase and operate the business themselves, began advertising to find a purchaser for the business; however, they were unable to find a purchaser. On February 15, 1981, after expiration of the time period which Chef's, Inc. had to purchase the business, Bull McWood, Inc. sold the inventory and other business interests comprising Chef's No. 2 to Bisbano's, Inc. for $52,500. On February 18, 1981, Bisbano's, Inc. accepted a $500 deposit toward the purchase of Chef's No. 2 from Farmer John's, Ltd., for $49,000.00.
Thereafter, the plaintiff-appellant filed suit for breach of contract alleging that the subsequent sale of Chef's No. 2 from Bisbano's, Inc. to Farmer John's, Ltd. in such a short time (i.e. 3 days) shows that Bisbano's, Inc., was not a good faith "bona fide" purchaser as required by Sec. 11 of the franchise contract. From an adverse judgment of the trial court the plaintiff-appellant has perfected this appeal. The defendant-appellee *1374 answered the appeal, requesting an increase in the trial court's award of attorney fees under the terms of the franchise contract, and additional attorney fees for handling this appeal.
The plaintiff-appellant, Chef's, Inc., alleges that if it had known that the business (Chef's No. 2) would be sold to Farmer John's, Ltd. (their competitor), they would have exercised their option to purchase the business. They further allege that they were misled and defrauded by Bull McWood, Inc. when it sold Chef's No. 2 to Bisbano's Inc., because Bisbano's, Inc. was a mere alter ego of Bull McWood, Inc. and a device by which Bull McWood, Inc. would be able to sell Chef's No. 2 to Chef's, Inc.'s competitor, Farmer John's, Ltd.
Bull McWood, Inc. argues that it complied fully with the contract and that the sale of Chef's No. 2 to Bisbano's Inc. was a legitimate sale whereby Bull McWood, Inc. could comply with the contract and yet be free to sell and transfer Chef's No. 2 to any prospective buyer.
It is clear that under the terms of the contract, specifically, Section 11, Bull McWood, Inc. gave the required notice of sale to Chef's Fried Chicken, Inc. of the offer by Bisbano's, Inc. The Court must give effect to the intent of the parties. LSA-C.C. Art. 1945. Moreover, any doubt as to the meaning of Section 11 must be resolved against Chef's, Inc., which wrote the contract. La.C.C. Art. 1957. Thus, it appears that Bull McWood, Inc. complied with Section 11.
Chef's Inc. argues that Bisbano's, Inc. and Bull McWood, Inc. were mere alter ego creations of William B. Bull, and that the offer to purchase Chef's No. 2 from Bull McWood, Inc. by Bisbano's, Inc. was a sham transaction designed to defraud Chef's, Inc., and allow Farmer John's, Ltd., Chef's, Inc.'s competitor, to acquire Chef's No. 2. This argument is unconvincing. It is noted that the offer to purchase, of which Chef's, Inc. was notified by Bull McWood, Inc. on November 14, 1980, clearly shows that Charles Bull was the attorney for both Bull McWood, Inc., and Bisbano's Inc. Thus, Chef's Inc. should have suspected that the two corporations were owned by the same persons, at least in part, since the same attorney represented both the potential buyer and seller. See Code of Professional Responsibility DR 5-105. This, at the least, should have prompted further investigation by Chef's.
Thus, Chef's, Inc. cannot be heard to complain that they had no knowledge that Bull McWood, Inc. and Bisbano's, Inc. were related. In fact, the two corporations did share a common officer and shareholder (William B. Bull). It is well settled that a corporation is a distinct legal entity from those persons who compose it. La.C.C. Art. 435, 436 and 437; Cahn Elec. Appliance Co. v. Harper, 430 So.2d 143 (La.App. 2d Cir.1983); Hight Enterprises, Inc. v. Smith and Johnson, Inc., 421 So.2d 267 (La.App. 4th Cir.1982), writ denied, 427 So.2d 1206 (La.1983). Moreover, the corporate identity is to be disregarded only in exceptional circumstances, such as fraud or deceit. Cahn Elec. Appliance Co. v. Harper, supra. See also American Bank of Welch v. Smith Aviation, Inc. 433 So.2d 750 (La.App. 3d Cir.1983).
In conclusion, it appears that Bull McWood, Inc. complied with Section 11 of the contract by giving the plaintiff-appellant, Chef's, Inc., the required notice of the offer to purchase made by Bisbano's, Inc. Chef's thus had ample opportunity to exercise its option to purchase the business, which it chose not to do. Thus, Chef's had no basis to complain of the sale to Bisbano's, Inc. and the subsequent sale to Farmer John's, Ltd. Chef's, Inc.'s general allegations of deceit on the part of Bull McWood, Inc., are insufficient to justify treating the sale from Bull McWood, Inc. to Bisbano's, Inc. as a sham or fraudulent sale. There was no mention in the contract of a minimum time period which the purchaser who bought from the franchiser must operate the business before selling or transferring their interest to Chef's competitor or any other buyer. Once Chef's failed to exercise its option, it could not prevent any eventual sale or transfer to a competitor, as this was not provided for in *1375 the contract. It is a rule so elementary in law that no citation is required that a person (or corporation) may sell what he owns at any time. In the absence of proof of fraud or deceit on the part of Bull McWood, Inc. in selling the business to Bisbano's, Inc., Chef's, Inc. had no recourse upon its failure to exercise its option. An examination of the record convinces us that the trial court did not commit manifest error when it found that the plaintiff-appellant failed to prove a breach of contract. It is equally clear from the record that the plaintiff-appellant has failed to carry its burden of proving any fraud or deceit sufficient to disregard any corporate entity.
Section 14 of the franchise contract provides:
"Attorney's feesIn the event that any claim hereunder has to be turned over to an attorney-at-law for the taking of action in relation to this agreement, the unsuccessful party in such action shall pay to the successful party, in addition to all of the sums that either party may be called on to pay, a reasonable sum for the successful party's attorney's fee."
After a review of the record, we have determined that the award granted to defendant by the trial court is sufficient as to those services rendered in the court below; no abuse of the trial court's discretion is apparent. For services rendered in handling this appeal, the defendant's attorney is awarded $550.
For the reasons assigned, the judgment of the trial court is hereby amended to include an additional award of $550 for attorney's fees. In all other respects, the judgment is affirmed. The cost of this appeal is assessed to the plaintiff-appellant.
AMENDED AND AFFIRMED.