KING, Judge.
This appeal presents for review whether or not the trial court was correct in making an award of damages for breach of contract.
Toce Oil Company, Inc. (hereinafter Toce) filed a suit for damages, based upon an alleged breach of an oil and gas turnkey drilling contract, against Great Southern Oil & Gas Company, Inc. (hereinafter Great Southern). The trial court awarded judgment in favor of Toce finding that Great Southern breached the contract. Great Southern timely appealed alleging that the trial court erred in: (1) admitting parol evidence to vary or modify the clear and unambiguous terms of a contract between the parties; (2) holding that Great Southern had contractually obligated itself to Toce to provide a drilling rig by a certain date; (3) denying Great Southern the opportunity to cross-examine Toce’s witness about an alleged obligation to its partners to drill an oil and gas well in the calendar year 1985; and (4) failing to recognize that the loss allegedly suffered by Toce was a consequence of a risk created by Toce and not of any breach of contract by Great Southern. We affirm.
FACTS
Toce, an oil and gas exploration company, secured a mineral lease on certain properties in St. Martin Parish, Louisiana, and wanted to drill an oil and gas well on the property. Toce, as operator, solicited bids for the drilling of the oil and gas well (hereinafter the Beyt Well). Toce acted for the parties who funded the proposed well. As is often the case in the modern business world, tax considerations were a major factor in the structuring of the financing for the well. These tax considerations made it important that sufficient progress be made with the Beyt Well to permit the drilling expense to be allocated for tax purposes to the 1985 calendar and tax year. Great Southern, a drilling contractor, proposed to drill the Beyt Well for the sum of $257,956.00. Toce accepted Great Southern’s bid and began to negotiate the details of the drilling contract. Thereafter, Great Southern sent to Toce a standard contract form of the International Association of Drilling Contractors (IADC) with a one page addendum entitled Turnkey Drilling Contract (hereinafter the original contract). The original contract was dated October 31, 1985 and signed by C.J. Delahoussaye for Great Southern. The standard printed form of the original contract had no commencement date typed in the appropriate blanks, but instead was typed the words “predicated by rig availability.” This was unacceptable to Toce because of the tax considerations. Tom Schiller of Toce called a meeting with Fred Martin of Great Southern on November 11, 1985. Schiller informed Martin of Toce’s need to drill the well by the end of December, 1985 and advised him this requirement would be put in writing. The written drilling time requirement of Toce, which Schiller and Martin had discussed on November 11, 1985, was presented to Great Southern by letter dated November 18, 1985 (hereinafter the letter). The letter, reproduced in whole, reads as follows:
*1087 [[Image here]]
The IADC form of the original contract, submitted by Great Southern to Toce and dated October 31, 1985, was changed by the addition of three paragraphs by Toce. It was then signed by Tom S. Schiller for Toce on November 15,1985 and returned to Great Southern on November 18, 1985 together with the letter from Toce to Great Southern.
The letter noted that three paragraphs, numbered 7, 8, and 9, had been added by Toce to the Special Provisions of the original contract to clarify certain provisions of *1088 the IDAC form contract. The letter then contained the following paragraph:
“Finally, Toce’s acceptance is predicated on Great Southern timely providing a rig to drill the subject well during the early part of December so that drilling operations are completed before the end of the year.”
Fred Martin signed the letter for Great Southern accepting and agreeing to the original contract with the added provisions and drilling time requirement of Toce set forth in the letter.
After the letter was signed by Great Southern, Toce constructed a site location specifically designed to meet the specifications of Great Southern’s drilling rig. On December 19, 1985, Mr. Schiller contacted Great Southern to determine when the Beyt Well would be “spudded in” and was told that Great Southern would “rather not drill the Beyt Well.” Mr. Schiller then arranged a meeting on December 20, 1985, with Mr. Bob McAdams, President of Great Southern. McAdams again told Schiller that Great Southern would “rather not drill the well.” When Schiller attempted to have Great Southern accept a prepayment of the turnkey price, Great Southern refused.
Great Southern did not drill the Beyt Well. On December 20, 1985, Toce contracted with Pernie Bailey Drilling Company (hereinafter Pernie Bailey) to drill the Beyt Well for the sum of $280,000.00 on a turnkey basis. Toce prepaid the amount of the contract and Pernie Bailey began drilling the well. Pernie Bailey did not complete the well to the required 10,500-foot depth and subsequently filed for relief under Chapter 7 of the Federal Bankruptcy Code. On January 10, 1986, Toce made demand upon Great Southern for $28,-058.19. This represented the difference between the price of Toce’s turnkey contract with Great Southern and the higher contract price which Toce had to pay to Pernie Bailey, the additional costs to modify the drilling site, and the costs for time expended finding a new contractor and negotiating the new turnkey contract. Great Southern refused to pay this sum and this litigation followed.
WAS GREAT SOUTHERN OBLIGATED BY THE CONTRACT TO DRILL AND COMPLETE THE WELL BY DECEMBER 31, 1985?
The answer to this question is the pivotal issue of this case.
Great Southern’s first two assignments of error concern this issue and, as they are interrelated, will be discussed together.
Toce takes the position that Great Southern agreed to commence and complete drilling of the Beyt Well by the end of 1985. Toce contends this is the meaning of the paragraph of the letter (hereinafter the paragraph) which reads: “Finally, Toce’s acceptance is predicated on Great Southern timely providing a rig to drill the subject well during the early part of December so that drilling operations are completed before the end of the year.” The trial court adopted Toce’s position.
Great Southern takes the position that the paragraph did not impose an obligation on it to commence drilling or complete drilling at any particular time. Great Southern contends that the paragraph (written by Toce) was intended as an “escape clause” for Toce’s benefit. Great Southern construes the “escape clause” to mean that if Great Southern did not commence drilling the Beyt Well in time to complete it by the end of the year 1985, Toce would no longer be bound by the contract and Toce could contract with another party to drill the Beyt Well.
Great Southern argues that the paragraph obligated it to drill the Beyt Well only if it was able to provide a drilling rig during the early part of December, 1985. Great Southern contends that it did not unequivocably obligate itself to provide a drilling rig on or before any specific date or period of time; rather it argues that the drilling of the Beyt Well was only contingent upon Great Southern’s ability to do so. Great Southern argues on appeal, as it did in the trial court, that the paragraph was only a resolutory condition placed in the contract by Toce for its benefit rather than *1089 as a contractual provision setting forth Toce’s drilling time requirement for the Beyt Well.
The learned trial judge, in his written reasons for judgment which we adopt, stated that:
“The parties entered into a written agreement for the drilling of the ‘Beyt’ well, the principal or original contract (P-1) was dated October 31, 1985 and November 15, 1985 and the supplemental letter agreement (P-2) was dated November 18, 1985. The two documents, which comprised the entire contract, were delivered to and exchanged by the parties on November 18, 1985. The contract contains language concerning the commencement and completion of drilling operations prior to the end of December 1985. The interpretation of that language is the principal dispute between the parties. ‘Toce’ contends ‘Great Southern’ was obligated to drill the well to completion before the end of 1985 while ‘Great Southern’ states that it had no such obligation and the language was simply an ‘escape clause’.
About the middle of December 1985 no drilling operations had commenced and when Tom Schiller of ‘Toce’ spoke to the managing executives of ‘Great Southern’ he was informed that they would not drill the well. In order to gain certain tax benefits ‘Toce’ felt it important that the well be drilled in 1985 and had so informed ‘Great Southern’ during initial negotiations. Upon learning that ‘Great Southern’ would not drill ‘Toce’ immediately negotiated with Pernie Bailey Drilling Co. (‘Pernie Bailey’), another drilling contractor, and entered into a drilling contract for the drilling of the ‘Beyt’ well. This contract was dated December 20, 1985 by the contractor and signed December 23, 1985 by the operator. In order to salvage the tax benefit sought by ‘Toce’ the contract price was pre-paid at the time of execution of the document. Unfortunately the ‘Pernie Bailey’ price was $280,000 and thus exceeded the ‘Great Southern’ price of $257,956. The difference is the principal item of damages sought.
‘Pernie Bailey’ commenced drilling operations in January 1986 but did not complete the well. It has since gone into Chapter 7 Bankruptcy proceedings.
‘Toce’ made a demand on ‘Great Southern’ for damages and the latter denied liability, stating the supplemental letter agreement (P-2) only recited an escape clause for Toce’s benefit and did not obligate it to drill the well if it determined no drilling rig was available. The testimony established that this was the first time that ‘Great Southern’ made known to ‘Toce’ that it considered the language of the contract to be non-binding as to it.
‘Great Southern’ filed an exception of no Right of Action during the course of the trial basing this exception on the contention that ‘Toce’ was not an owner of any interest in the well, but simply the operator. The actual owners were other individuals and companies to whom interest in the well had been sold.
The evidence establishes that ‘Toce’ was the operator and as such responsible for arranging and managing drilling operations. It was the contracting party with ‘Great Southern’ and the latter is obligated under the contract to ‘Toce’ and not to the working interest owners. The working interest owners had no right of action to sue for non-performance of the contract. ‘Toce’ does have this right of action. Accordingly, the exception is overruled.
The contract documents consist of exhibits P-1 and P-2. The first document in paragraph 2 provides for the commencement date as follows:
‘Contractor agrees to use best drilling efforts to commence operations for the drilling of the well by the ... day of ..., 19 ... or predicated by rig availability.’
‘Toce’ found this indefinite obligation unsatisfactory and drafted a supplemental agreement which was accepted by ‘Great Southern’. (P-2) The pertinent language therein is as follows:
‘Finally, Toce’s acceptance is predicated on Great Southern timely providing a rig to drill the subject well during *1090 the early part of December so that drilling operations are completed before the end of the year.’
This language clearly provides an agreement obliging ‘Great Southern’ to provide a rig and drill the well to completion before the end of the year. When ‘Great Southern’ accepted and agreed to this supplemental letter agreement it accepted and agreed to this obligation.
Elsewhere in the contract documents under paragraph 26 Special Provisions, sub paragraph 1, the contractor bound itself to drill this well on a turnkey basis to 10,500 feet and provide certain equipment and logs for the sum of $257,956. To hold that the contract documents do not provide for a time period for performance, would render the entire agreement meaningless.”
The standard of review for appellate courts is set forth in the case of Canter v. Koehring Company, 283 So.2d 716 (La.1973) and further discussed in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not disturb a finding of fact in the absence of manifest error. Manifest error means “clearly wrong.” Guidry v. State Farm Mutual Automobile Insurance Company, (La.App. 3 Cir.1989), an unreported decision bearing Docket Number 88-237 rendered on May 24, 1989. Both Toce and Great Southern agree that the original contract and the letter constitute the drilling contract between the parties. Since the contractual language employed in the letter by Toce is clear and unambiguous, this court must enforce it as written. Foreman v. Exxon Corp., 770 F.2d 490 (C.A. 5 1985); Chef's Fried Chicken, Inc. v. Bull McWood, Inc., 459 So.2d 1371 (La.App. 3 Cir.1984). The intent of parties to a contract is to be determined by the words of such instrument, and when these words are clear and explicit and lead to no absurd consequences, such words are determinative of the intent of the parties. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Bourque v. Lehmann Lathe, Inc., 476 So.2d 1129 (La.App. 3 Cir.1985), writ den., 479 So.2d 362 (La.1985); Smith v. Moncreif, 421 So.2d 1127 (La.App. 3 Cir. 1982), writ den., 426 So.2d 177 (La.1983). The Louisiana Civil Code mandates that the provisions of a contract are to be interpreted with reference to each other and in such a manner as to render them effective rather than ineffective. La.C.C. Arts. 2049 and 2050. Great Southern attempts to characterize the paragraph as a “resolutory condition”, See La.C.C. Art. 1767, rather than recognizing it as a counteroffer to Great Southern’s proposed original contract that Great Southern accepted. Because Great Southern accepted this counteroffer, it is clear that this interpretation is only an effort to escape Great Southern’s obligation to drill under the contract. The trial court noted that to accept Great Southern’s interpretation of the contract would mean that the drilling contract did not provide a time for performance which would render the contract meaningless. We do not find that the trial court’s factual determination that Great Southern contracted to provide Toce with a drilling rig by a certain date is manifestly in error or clearly wrong.
Great Southern also argues that the trial court erred in admitting parol evidence to vary or modify the clear and unambiguous paragraph of the drilling contract between the parties. The trial court permitted Toce to offer evidence, not to vary or modify the contract, but in an attempt to show that Great Southern had breached the drilling contract between the parties. On this issue, Toce argued that even if the paragraph was construed as a resolutory condition, Great Southern had breached its contract before Toce exercised the resoluto-ry condition. Mr. Delahoussaye, Great Southern’s Sales Manager, testified that its rigs were obligated on a first come, first serve basis. He explained that once Great Southern received a signed drilling contract from a third party, Great Southern placed that party in line for the next available rig suitable for the job. Toce’s drilling contract with Great Southern was made on November 18, 1985. Great Southern subsequently entered into another drilling contract with May Petroleum, dated November 27, 1985, and on November 30, 1985, Rig 55, a rig suitable for drilling the Beyt Well *1091 became available. This rig was moved onto the May Petroleum job rather than onto Toce’s job. Thus, Great Southern had a rig available to drill the Beyt Well as early as November 30, 1985. But, contrary to Great Southern’s usual practice, it assigned this rig to drill another well with a later contract date. For these reasons, Toce argues that if the contract condition of rig availability was not fulfilled, it was Great Southern’s fault, because the suspen-sive condition of rig availability should have been regarded as fulfilled by November 30, 1985 or, at the latest, when Toce demanded and Great Southern refused to supply a rig on December 19, 1985. For this reason, Toce argued that Great Southern’s breach of contract occurred before Toce exercised the paragraph which Great Southern contended was only a resolutory condition.
We do not find that the trial judge was manifestly in error or clearly wrong in admitting evidence concerning Great Southern’s rig availability. This evidence was not introduced to vary or modify the terms of the contract between the parties. Rather it was offered to show that Great Southern had breached the contract before Toce could exercise the resolutory condition, even conceding Great Southern’s position was correct.
Great Southern, in its third assignment of error, further argues that the trial court erred in denying it the opportunity to cross-examine Toce’s witnesses on its contention that it was obligated to its partners to drill the subject oil well in the calendar year 1985. The trial court correctly disposed of this contention when it overruled Great Southern’s peremptory exception of no right of action. The trial court correctly held that Toce was the operator responsible for arranging and managing the drilling operations of the Beyt Well and was the contacting party with Great Southern. Great Southern was obligated under the contract to Toce. It was not contractually obligated to other working interest owners who had no right of action to sue for non-performance of the contract between Toce and Great Southern. Whatever Toce’s obligations and arrangements were between itself and the other owners of the working interest in the Beyt Well, these were irrelevant to the issue of whether or not Great Southern had breached its drilling contract with Toce. For this reason, we find that the trial court correctly maintained Toce’s objection to Great Southern’s attempt to cross-examine Toce’s witnesses concerning its obligations and agreements with its partners to drill the Beyt Well in the calendar year 1985.
Finally, in its last assignment of error, Great Southern contends that the trial court erred in failing to recognize that the loss allegedly suffered by Toce was a consequence of a risk it created and not of any breach of contract by Great Southern. Great Southern argues at length that the typical turnkey drilling contract only calls for payment upon completion of a well to specification. Since Pernie Bailey had not completed the Beyt Well, Toce had a legal right to collect the money it prepaid to Pernie Bailey and, to this extent, Toce was not compelled to pay any sum over the original contract price with Great Southern. Great Southern argues that Toce was not damaged because it is arguably entitled to the return of the full prepaid turnkey drilling contract price Toce prepaid to Pernie Bailey. Great Southern recognizes that Pernie Bailey is insolvent and involved in a Chapter 7 Federal Bankruptcy proceeding, but argues that Pernie Bailey has a moral obligation to repay the prepaid drilling contract price to Toce. The trial court correctly appraised the moral obligation of a bankrupt company as worthless and calculated Toce’s damages accordingly. Great Southern’s breach of its obligation to complete the Beyt Well by the end of the calendar year 1985 left Toce with no choice but to prepay the drilling cost to Pernie Bailey or suffer adverse tax consequences. Toce cannot be faulted for having chosen a course of action which resulted in a monetary loss, in light of Great Southern’s breach of its obligations under the drilling contract between the parties.
The doctrine of mitigation of damages imposes on an injured party the need to *1092 exercise reasonable diligence and ordinary care in attempting to minimize his damages after an injury has been inflicted. The care and diligence required of him is the same as that which would be used by a man of ordinary prudence under like circumstances. This principle will not be applied to restrict an injured party’s recovery when the injured party is required to make substantial expenditures of his own funds or incurs substantial risks in order to avoid the consequences of a breach of contract. See Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968); Pelloquin v. Missouri Pacific Railroad Company, 216 So.2d 686 (La.App. 3 Cir.1968).
For these reasons set forth above, we affirm the judgment of the trial court. All costs of this appeal are taxed to defendant-appellant.
AFFIRMED.
STOKER, J., dissents and assigns written reasons.