834 So.2d 1078 (2002)
Wayne and Priscilla ROYER
v.
V.P. PIERRET CONSTRUCTION COMPANY, INC., et al.
No. 02-263.
Court of Appeal of Louisiana, Third Circuit.
October 28, 2002.
Writ Denied January 31, 2003.
Gary McGoffin, Jacques E. deMoss, Durio, McGoffin & Stagg, Lafayette, LA, for Plaintiffs/Appellants Wayne and Priscilla Royer.
Charles M. Rush, Rush, Rush & Calogero, Lafayette, LA, for Defendant/Appellee K.O.O.L. Partnership.
Court composed of BILLIE COLOMBARO WOODARD, OSWALD A. DECUIR, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Wayne and Priscilla Royer appeal the trial court's dismissal of their redhibition suit after finding that the New Home Warranty Act, La.R.S. 9:3141-3150, provided their exclusive remedy against the remaining party in this litigation. For the following reasons, we affirm.

Facts and Procedural History
On May 31, 1996, the Royers executed an agreement with V.P. Pierret Construction Company (Pierret) and K.O.O.L. Partnership (K.O.O.L.) to purchase a home being constructed by Pierret on land owned by K.O.O.L.[1] Rae Elaine Pierret Maeso *1079 signed the purchase agreement as agent for both Pierret and K.O.O.L. On Line 78 of the agreement, the parties checked that the sale was to be with redhibition warranty, as opposed to "as is," but an addendum to the agreement provided that "New Home Warranty will be given by Builder." On September 3, 1996, an act of cash sale was executed between the Royers and K.O.O.L. only, who was the record owner of the land. Mrs. Maeso again signed, but only on behalf of K.O.O.L.
In the summer of 1997, the Royers discovered several cracks in the masonry and fireplace tiles and on the patio slab of their home. After assuring the Royers that the cracks were caused by common settlement conditions in Louisiana, Pierret performed some repairs. Notwithstanding these repairs, additional cracks began appearing throughout the home, prompting the Royers to consult two foundation repair experts in the fall of 1998. The experts concluded that the home's foundation had failed after they located a sheer crack approximately 1/4" wide that ran the from the front to the back of the slab. In February or March of 1999, Pierret had some soil samples taken, but thereafter attempted no further repairs.
On December 17, 1999, the Royers filed suit against Pierret, its insurer, and K.O.O.L. After settling their claims under the New Home Warranty Act against Pierret and its insurer, the Royers proceeded in redhibition against K.O.O.L., as the vendor, for general damages, moving expenses, temporary housing expenses, and attorney fees. After trial on the merits, the trial court found the relationship between Pierret and K.O.O.L. was a joint venture. Because the New Home Warranty Act defines "builder" to include a joint venture, the trial court found that the Act provided the exclusive remedy to the Royers. The Royers appeal, assigning four errors.

Opinion
In their first two assignments of error, the Royers contend that the trial court erred in finding (1) that the purchase agreement did not provide them with a remedy in redhibition against the seller and (2) that the identity of ownership between K.O.O.L. and Pierret relieved K.O.O.L. of its redhibition obligations. Because these two assignments are interrelated, we will discuss them together.
The New Home Warranty Act provides "the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply." La.R.S. 9:3150 (emphasis added). The New Home Warranty Act, however, is only exclusive between an "owner" and a "builder." Squyres v. Nationwide Hous. Sys., Inc., 98-8 (La.App. 3 Cir. 6/3/98); 715 So.2d 538. Under La.R.S. 9:3143(1), a "builder" is defined as "any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence." (Emphasis added.)
In finding that K.O.O.L. met the definition of a "builder" because of its joint venture status with Pierret, the trial court summarized the facts in the record as follows:
V.P. Pierret Construction Company, Inc. is a closely held corporation engaged primarily in the business of constructing residential housing. The sole shareholders of this corporation have always been members of V.P. Pierret's family. He is now deceased, and his children run the business. K.O.O.L.

*1080 Partnership is also comprised of the late Mr. Pierret's children. This entity was organized for the sole purpose of holding real estate that was acquired by V.P. Pierret and transferred to his children.
One such acquisition was the Golden Meadow Subdivision in Scott, Louisiana, which had been partially developed in the 1960's as a residential neighborhood. V.P. Pierret acquired the land in the late 1970's, re-subdivided it and transferred it to the K.O.O.L. Partnership. Later, V.P. Pierret Construction Company, Inc. began building houses on the lots in the subdivision and selling them. Testimony at trial showed that K.O.O.L. Partnership has sold fifty lots with homes on them in that subdivision and that V.P. Pierret Construction has always been the contractor who constructed the homes.
....
For the following reasons the court agrees with the defendant that the relationship between K.O.O.L. Partnership and V.P. Pierret Construction Company was a joint venture. The testimony of Rae Elaine Pierret Maeso clearly established the close relationship between the two entities and the joint venture status. Maeso testified that the K.O.O.L. Partnership was formed to gain the greatest tax advantage for the transfer of property from V.P. Pierret to his children. The evidence presented at trial also established that the three partners of K.O.O.L. Partnership, the late V.P. Pierret's children, were also salaried employees of V.P. Pierret Construction Company.
The Agreement to Purchase and Sell and the addendum thereto also illustrate K.O.O.L. and V.P. Pierret Construction's joint venture status. Rae Elaine Pierret Maeso signed these documents and, underneath her signature she added the words, "K.O.O.L. Partnership/V.P. Pierret Const." Additionally, the check written by the Royers to K.O.O.L. Partnership in connection with the sale was endorsed by K.O.O.L. and then deposited into V.P. Pierret Construction's bank account.
Mrs. Maeso further explained that her family's "main goal" was to build homes for sale on the lots in Golden Meadow subdivision. To this end, K.O.O.L. owned the land and paid property taxes, while Pierret obtained construction permits and built the homes. According to Mrs. Maeso, all of K.O.O.L.'s activities flowed through Pierret, as K.O.O.L. did not sell any land unless a Pierret home had been constructed on it.
"A joint venture results from the undertaking by two or more persons to combine their efforts, knowledge, property or labor to engage in and carry out a single business venture for joint profit." Riddle v. Simmons, 589 So.2d 89 (La.App. 2 Cir.1991), writ denied, 592 So.2d 1316 (La.1992). Whether a joint venture exists is a question of fact to be decided according to the facts and circumstances of each case. Id. In the present case, we find no error in the trial court's decision that both K.O.O.L. and Pierret, as joint venturers, were "builders" under the New Home Warranty Act.[2]
*1081 The Royers also argue that Line 78 of the purchase agreement indicates that the parties intended to provide a redhibition warranty. However, the addendum to the purchase agreement states that "New Home Warranty will be given by Builder." As comment (e) of La.Civ.Code art. 2520 provides: "The Articles on redhibition do not apply to hidden defects discovered in a new home governed by the New Home Warranty Act, R.S. 9:3141-3150." (Emphasis added.) See also Rodriguez v. Sunrise Homes, Inc., 532 So.2d 952 (La.App. 5 Cir.1988), in which the court suggested, in dicta, that the New Home Warranty Act would supersede a contractual provision for redhibition. In Rodriguez, the act of sale provided for the redhibitory action between the seller and the builder. Although the document was executed before the New Home Warranty Act's effective date, the plaintiffs did not discover the defects in the home until after the Act was in effect. The court found that the plaintiffs' cause of action came into existence when the home was constructed; therefore, the provisions of the Act could not be applied retroactively "because they change the substantive provisions incorporated into the contract of sale, i.e., (1) the right to a recision of the sale under a proper set of facts, and (2) the right to a recision without first giving an opportunity to seller to repair the defects." Id. at 955 (emphasis added). The court suggested that the result would have been different, had the plaintiffs' cause of action arisen after the Act's effective date.
The Royers also argue that, by checking the box for redhibition on the purchase agreement, the parties intended to provide for additional warranties as authorized by the New Home Warranty Act. La.R.S. 9:3144(B) provides that, unless the parties otherwise agree in writing, the builder's warranty shall exclude a list of eighteen items that follow. Item fifteen is "any cost of shelter, transportation, food, moving, storage, or other incidental expense related to relocation during repair," which is one element of damages in the Royers' suit. Further, La.R.S. 9:3144(C) provides that the Act "establishe[s] minimum required warranties" that "shall not be waived by the owner or reduced by the builder[.]" (Emphasis added.) Although the parties may agree to expand the builder's warranty, we do not find that checking one box on a standard form purchase agreement is sufficient to include all the items in La.R.S. 9:3144(B)(1)-(18). We agree with K.O.O.L. that the Act contemplates a specific agreement as to what items will be added to the builder's warranty.
Because we agree with the trial court that the New Home Warranty Act applies, we do not reach the Royers' remaining assignments of error concerning damages.

Decree
For the above reasons, the judgment of the trial court is affirmed at Appellants' cost.
AFFIRMED.
WOODARD, J., dissents and assigns written reasons.
WOODARD, J., dissenting.
I respectfully dissent from the majority's decision and reasoning in the instant matter for two reasons: (1) I believe that applying The New Home Warranty Act to K.O.O.L. was, both, legal and manifest error, since K.O.O.L. was not a builder, within the Act's definition, either, singularly or as part of a joint venture; and (2) even if it had been, the Act would not exclude the parties' right to contract for an additional warranty/remedy under redhibition. In other words, The New Home Warranty Act, which is specific and express, *1082 was enacted to supplant the nebulous and ambiguous redhibition laws. Both apply, by operation of law, to protect the consumer. Neither provides that parties cannot contract for more, but The New Home Warranty Act prohibits purchasers from waiving, and builders from reducing, the warranty. The Legislature's clear mandate, in enacting the Act, is to ensure the consumer's protection against defective home construction. There is nothing in the Act to warrant an interpretation that the Legislature intended to take protection away from consumers by prohibiting them from contracting for more protection. In fact, in section C. of the Act, the Legislature states that "The provisions of Subsection A of this Section establish minimum required warranties...." (Emphasis added.) This suggests that the consumer may contract for greater protection but that the law provides for, at least, this much.
Notwithstanding, to support its position that K.O.O.L. is relieved of liability under redhibition, the majority relies on the Act's language that the Act "`provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply."' However, under the instant case's facts, there are two problems with this reliance; namely, the Act is definitive that it is to be applied, only, to disputes between builders and owners of the home's construction and, impliedly, only, when the parties have not contracted, otherwise. If either of these requirements is not met, the Act should not be applied as an exclusive remedy. Neither was met in the case sub judice.
Regarding the former requisite-between builder and owner-under La.R.S. 9:3143(1), a "builder" is defined as "any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence." (Emphasis added.) The only constructor of the Royer's home was Pierret. Nevertheless, the majority advances the lower court's finding that K.O.O.L. and Pierret constituted a joint venture, and, therefore, the Act would apply as the Royers' exclusive remedy against K.O.O.L. The record does not support this finding.
In order for a joint venture to exist, the parties must intend to enter into one.[1] To the contrary, K.O.O.L.'s counsel argued, during the trial, that K.O.O.L.'s relationship with Pierret was not a joint venture, and Mrs. Maeso, both entities' representative, confirmed this and made it clear that the parties had no intent to have that legal relationship. She explained that K.O.O.L. was strictly the landowner and did not have any control over the builder's business, negating another essential element required to establish a joint venture.[2]
The following exchanges at the trial, unequivocally, demonstrate that K.O.O.L. was not a joint venture, and, therefore, under these facts, not a builder:
MR. MCGOFFIN (the Royers' attorney).
Q. Prior to the sale of the home to the Royers, do you recall how many homes would have been sold by the V.P. Perret (sic) Construction/KOOL Partnership venture?
MR. RUSH (KOOL's attorney). I object to the use of the term V.P. Perret(sic)/KOOL Partnership venture, *1083 since there was no evidence that there was any venture between the two entities.
MR. MCGOFFIN.
Q. I'll ask the question. Was there a joint venture or agreement between the V.P. Perret (sic) Construction and KOOL Partnership to sell the property, and construct the home jointly?

MR. RUSH. I'm going to object to the use of the term jointly, as it implies it establishes some legal relationship between the parties.

THE COURT. I agree.

MR. MCGOFFIN.
Q. What was your agreement between KOOL Partnership and V.P. Perret (sic) for the construction and sale of the homes on the lots owned by KOOL Partnership?

A. Well, KOOL Partnership was strictly the land owner. KOOL Partnership did not control V.P. Perret (sic) Construction. V.P. Perret (sic) Construction solely built the improvements.

* * *
MR. RUSH.
Q. What business was KOOL formed to be in?

A. Basically, real estate, sell land, and we did have some renters.
Q. At that time, did it ever perform any construction services?

A. No. We're not licensed to that.
(Emphasis added.)
The Act is explicit, in its last sentence of (1) under "Definitions," that, to qualify as a builder, the person or entity must actually construct the home, and the owner of the underlying land is irrelevant to the definition. Ms. Maeso emphatically stated that the only entity, which constructed homes was Pierret, not K.O.O.L, and that the two did not have a joint venture to do so. Therefore, the record does not support a finding that K.O.O.L was part of a joint venture, "which constructs a home...." Accordingly, it is not a builder, under the Act's definition, and to so find, was manifest error. Since K.O.O.L was not a builder, the Act cannot be applied to it and is not the Royers' exclusive remedy against K.O.O.L.
Notwithstanding, even if, arguendo, K.O.O.L had been a builder, the Act, would not have prohibited it from contracting with the Royers for additional remedies under Redhibition; it, only, would have prohibited it from reducing the warranty, which the Act provides. Nevertheless, the majority supports its contrary position with commentary, stating, "The Articles on redhibition do not apply ... in a new home governed by the New Home Warranty Act."[3] (Emphasis added.)
However, when the Act specifies, under its "Exclusiveness" provision that "no other provisions of law relative to warranties and redhibitory vices and defects shall apply" (emphasis added), the Legislature contemplates this Act's application to be by operation of law, just as it did with redhibition before the Act's enactment. As such, it designed the Act to give the unsuspecting consumer, at least, this minimum protection. If it had intended to prohibit the consumer's ability to contract for more, it would have stated, no other provisions of law or contract relative to warranties and redhibitory vices and defects shall apply.
The majority concedes that the Act allows parties to expand the builder's warranty, as long as they specifically state the additional item(s) to be protected and as *1084 long as the stated item is among the eighteen, which Section B. of the Act lists.
I disagree. Section B. says, "Unless the parties otherwise agree in writing, the builder's warranty shall exclude the following items:" However, the eighteen items, listed, do not concern the home's construction, per se, or items, which the original builder constructed, that are part of the home. Instead, they pertain to items extraneous to the home's construction, such as landscaping, fencing, land movement, and the like. Obviously, by these exclusions, the Legislature was, simply, narrowing the Act's warranty to be for the home, which the original builder constructed, unless the parties desired to include the extraneous items, which they could do by a written contract. Thus, this section applies to extraneous items, not to the warranties related to the home, itself. And, there is nothing to suggest that, because it allowed the parties to contract for a warranty to protect extraneous items, which the Act, by operation of law, did not include, that it intended to prohibit the parties from contracting for additional warranties involving the home's construction.
Finally, the majority maintains that, by checking a box on a standard form, the parties did not sufficiently express an intention to expand the warranty; however, the parties, also, included an addendum, consisting of handwritten provisions, to the standard form contract. There are several sections of the standard form that are, neither, checked nor filled in but, rather, say "see addendum." Thus, clearly, the parties took the time to put, in writing in the standard form, any provisions which they felt were not specifically expressed to their satisfaction. They checked the redhibitory warranty provision on the standard form and without reference to the addendum. Accordingly, they must have agreed that this provision, as it was represented on the form, adequately expressed their intention.
While warranties, under The New Home Warranty Act and redhibition, are similar, having some overlapping protections, they are, in no way, conflicting or mutually exclusive, requiring a choice to be made. Redhibition, simply, provides additional remedies, which the New Home Warranty Act does not. And, one can assume that receiving this additional warranty was added incentive to and consideration for the Royers to consummate this purchase.
It is well settled that parties can contract for anything that is not contra bonos mores.[4] Accordingly, these parties' contract should be honored, as the law between them[5] and, as such, applied to K.O.O.L., providing the Royers their rights under redhibition.
NOTES
[1] At the time the contract was signed, the slab for the home had been poured and some of the wooden framing had been erected. The home was located in Golden Meadow subdivision in Scott, Louisiana.
[2] K.O.O.L.'s status as a "builder" would not conclusively establish the New Home Warranty Act as the Royers' exclusive remedy, if the defects complained of were unrelated to the builder's actions in the construction of the home. See Melancon v. Sunshine Constr., Inc., 97-1167 (La.App. 1 Cir. 5/15/98); 712 So.2d 1011 (where plaintiffs were afforded additional remedies for defects caused by acts of vandalism that occurred prior to the sale). In the present case, however, all of the Royers' complaints concern the construction of the home.
[1] LaFleur v. Manuel, 97-587 (La.App. 3 Cir. 4/1/98), 712 So.2d 541; Guillory v. Hayes, 576 So.2d 1136 (La.App. 3 Cir.1991).
[2] Id.
[3] La.Civ.Code art. 2520 cmt. (e).
[4] Smith v. Moncrief, 421 So.2d 1127 (La.App. 3 Cir.1982), writ denied, 426 So.2d 177 (La. 1983).
[5] Id.